SEAWELL *v.* YOUNG.

Opinion delivered December 16, 1905.

1. EVIDENCE—ACTS AND DECLARATIONS OF PARTY IN POSSESSION.—The acts and declarations of a person in possession of a tract of land are admissible to show the character and extent of his possession. (Page 315.)

2. PARTITION—WHEN ORAL AGREEMENT ENFORCIBLE.—Where A and B, cotenants, agreed verbally to divide their land equally, and such agreement was consummated by A taking the east half and B the west half, the agreement was enforcible in equity, although no deed was executed evidencing the transfer of title. (Page 316.)

3. SAME—HOW PROVED:—A voluntary partition of lands by cotenants may be established by any competent evidence. (Page 316.)

4. INNOCENT PURCHASER—WHO IS NOT.—One who purchases land with notice of another's claim thereto is not an innocent purchaser. (Page 316.)

Appeal from Marion Chancery Court; ELBRIDGE G. MITCH-
ELL, Judge; affirmed.

### STATEMENT BY THE COURT.

This was a suit brought in the Marion Circuit Court, by L.
L. Young, Katherine Sowell, Elvira Stockton, Sarah Morris,
Allie Childs, George Seawell, William Seawell and A. C. Seawell,
as plaintiffs against L. L. Seawell and John M. Nowlin, as defend-
ants, for the possession of six-sevenths interest in the east half of
the east half of the east half of the southeast ¼ of the south-
east ¼ of section 4, in township 18 north, range 16 west, in
Marion County, Arkansas.

L. L. Young, Katherine Sowell, Elvira Stockton and Sarah
Morris, each, claim an interest in said lands as children and heirs
at law of A. E. Seawell, deceased; Allie Childs, George Seawell
and William Seawell claim one interest, as heirs at law of Frank
Seawell, deceased, who was a son and heir-at-law of A. E. Sea-
well, deceased; A. C. Seawell claims an interest in said land by
conveyance from W. Q. Seawell, who was a son and heir-at-law
of A. E. Seawell, deceased.

L. L. Seawell, one of the defendants below, was a son and
heir at law of A. E. Seawell, deceased, and he conveyed said
above described land to John M. Nowlin, the other defendant
below, the said L. L. Seawell claiming to be the owner of the
entire tract of land at the time he made said conveyance.

The suit was originally brought on the law side of the
docket, and was afterwards transferred to the chancery docket on
motion of the defendants.

From a decree for the plaintiffs below, the defendants have
appealed.

The complaint, after deraigning title in L. L. Seawell and A.
E. Seawell, alleges that the defendant, L. L. Seawell and A. E.
Seawell, deceased, each owning an undivided one-half interest,
held said lands in common until the 13th day of April, 1896, at
which time they made a division of said lands, the defendant,
L. L. Seawell, taking the west half of said tract, and A. E. Sea-
well taking the east half, and they agreed to make deeds so as to
complete the conveyance of said lands, and on the 13th day of
April, 1896, the said A. E. Seawell, in accordance with said agree-

ment, made, executed and delivered to the defendant, L. L. Sea-
well, her deed, conveying to him all her right, title and interest in
and to the west half of the east half of the east half of the S. E.
¼ of the S. E. ¼ of said section 4, and that said deed is duly·
recorded, and a copy of the same is made a part of this complaint,
and marked "Exhibit G." They further state that the said L. L.
Seawell, after receiving the deed from the said A. E. Seawell to
the west half of said tract of land, as above set out, failed and
refused to execute a deed to the said A. E. Seawell for the east
half of said tract.

The complaint then sets up the death of A. E. Seawell, and
alleges that she died seized and possessed of the lands in contro-
versy, and, after naming the heirs, alleges that L. L. Seawell
wrongfully took possession of said lands, falsely claiming to be
the owner thereof, and, after certain other allegations unneces-
sary to set out, the complaint continues as follows:

"They further state that the defendant L. L. Seawell, as
they are informed and believe, falsely and fraudulently combined
with the defendant J. M. Nowlin to defraud these plaintiffs
out of their interest in and to the aforesaid lands, and, as they are ·
informed, executed his deed to the said John M. Nowlin, pur-
porting to convey all of the above-described lands to the said
John M. Nowlin, etc. They further state that the said John M.
Nowlin had full knowledge of the right, title and interest of these
plaintiffs and those under whom they hold at the time he made
said pretended trade with the said L. L. Seawell."

After setting up that the heirs were all of age, and that there
was no administration on the estate of A. E. Seawell, the com-
plaint concluded as follows:

"Wherefore plaintiffs pray judgment of this court 'settling'
their interest in said estate, for the possession of the same, and for
$100 damages for the wrongful withholding of said lands, by the
defendants, L. L. Seawell and John M. Nowlin, and for judgment
for their costs, etc."

The defendants, L. L. Seawell and John M. Nowlin, answered
jointly, denying the unlawful possession, and each filed separate
answers. Nowlin in his answer denies that he had any knowl-
edge of any equities existing in favor of said plaintiffs against the
said L. L. Seawell, other than those shown by the records of

Marion County, Arkansas, and denies any complicity in any fraudulent ·design in attempting to obtain title to said property, if any there were.

L. L. Seawell denied any division of the lands between himself and A. E. Seawell or any agreement to divide same as alleged in the complaint. The answer then continues as follows:

"Said L. L. Seawell admits· that plaintiffs have set forth in their complaint, filed herein, a full statement of the title, which shows the record title to said lands to be as follows, tow.t: Four and one-half sevenths thereof in the defendant John· M.· Nowlin, and two and one-half sevenths in plaintiffs, but he avers the facts to be that he and the said A. E. Seawell were tenants in common of said tract of land by virtue of purchase thereof and deeds thereto, as shown in plaintiffs' complaint. And that, while in the actual possession and occupancy of said lands aforesaid, his cotenant, the said 'A. E. Seawell, agreed with him, the said L. L. Seawell, that he should erect on said lands a dwelling house and other improvements at his own cost, for the use and occupation of the said A. E. Seawell, during her lifetime, and that she, the said A. E. Seawell, would convey to him her undivided one-half interest in said tract of land. That, in performance of his part of said agreement,· and in full compliance therewith, he caused to be erected on the tract of land in controversy a dwelling house and other improvements, at the sole cost and expense of him, the said L. L. Seawell, which costs amounted to the sum of eight hundred· and fifty ($850) dollars, and which house and premises she, the said A. E. Seawell, had the occupation and use of not only during her lifetime, but that the rents and profits thereof, after her death, were, by the consent of the said .L. L. Seawell, devoted to the paying funeral expenses of the said A. E. Seawell. And further,· in 1896, when the said L. L. Seawell had become involved, by reason of expenditures in improving the tract of land in controversy in order to provide· his mother, the said A. E. Seawell, a comfortable home, and in part compliance with said agreement, the said A. E. Seawell made, executed and delivered to the said L. L. Seawell a deed to the west half of said ten-acre tract, conveying all her interest in said west half to him, so that he could secure his creditors, and thereby save the home intact for his mother, the said A. E. Seawell, and not by rea-

son of any agreement to partition the said ten acres, as alleged by plaintiffs in their complaint.

. · "Defendant, L. L. Seawell, states that he has paid the taxes on the land aforesaid to the amount of $125 as will more fully appear by the tax receipts herewith filed and made a part hereof. And that he has been in the peaceable and uninterrupted possession of said lands until he sold and conveyed the same to his codefendant, John M. Nowlin."

The prayer was that the title to all of said lands be decreed to be in the said John M. Nowlin, or that the plaintiffs be decreed to be the owner of a two and one-half sevenths interest, with a lien thereon for the sum of nine hundred and fifty dollars in favor of the said John M. Nowlin to be paid within such time as the court may decree, and before the said John M. Nowlin shall be required to deliver possession of said premises aforesaid.

The plaintiffs filed a reply to the answers of Nowlin and Seawell, denying that Seawell or Nowlin had any interest in the land in controversy except a one-seventh interest, which L. L. Seawell acquired as heir at law of E. A. Seawell, deceased, and denying all the allegations set up in the separate answer of L. L. Seawell, and praying for damages as in the original complaint, and that the conveyance from L. L. Seawell to Nowlin be canceled, and for costs and all equitable relief. The cause was heard upon depositions, and the court made the following findings, and entered decree accordingly:

1. That the plaintiff's ancestor, A. E. Seawell, died seized and possessed of the E. ½ of the E. ½ of the E. ½ of the S. E. ¼ of the S. E. ¼ of section 4, in township 18 north, range 16 west, situated in Marion County, Arkansas.

2. That she left surviving her as her only heirs at law the plaintiffs and the defendant, L. L. Seawell.

3. That the defendant, John M. Nowlin, purchased the land with knowledge of the rights and title of plaintiffs.

4. And that plaintiffs are the owners and entitled to the possession of six-sevenths interest in said lands.

5. And that the rents and profits of said lands collected by the defendant, L. L. Seawell, shall offset the taxes and improvements made by him on said land.

*J. W. Black,* for appellant.

1.   The record title is in the appellants.   A mere preponder-ance of evidence is not sufficient to overcome such title.   9 Cyc. 393.

2.   The proof shows that E. A. Seawell's interest in the land vested in L. L. Seawell at her death, by virtue of their agreement with reference to improvements placed on the land by him.

3.   If appellees were tenants in common with L. L. Seawell, he is entitled to reimbursement for improvements.   7 Ballard's Real Prop. § 375; 1 *Id.,* § 245; 56 S. W. 781.

*S. W. Woods,* for appellees.

1.   The proof establishes a division of the tract of land between E. A. Seawell and L. L. Seawell, whereby she became the owner of the east half thereof.   Her acts and declarations are admissible in evidence to explain the character and extent of her possession.   24 Am. & Eng. Enc. Law (2 Ed.), 690 and cases cited; 178 Ill. 556; 59 Ark. 303.   This partition was binding on them, though not in writing.   11 Am. & Eng. Enc. Law, 1142, and note; 10 L. R. A. 763; 6 *Id.* 67; 9 *Id.* 343; *Ib.* 584; 16 *Id.* 326; 39 *Id.* 637; Beach, Mod. Eq. Jur. § 981 and notes; 117 Ind. 322; Freeman on Part. § 398.   Voluntary partition of lands by cotenants may be established by any competent evidence. 17 A. & E. Law, 667; 8 *Id.* 672.

2.   The proof shows that appellant Nowlin purchased with knowledge of appellees' claim.

3.   This court will sustain the findings of the chancellor upon the pleadings and depositions, unless the preponderance of evidence is clearly against them.   44 Ark. 216; 24 Ark. 431; 49 Ark. 465; 41 Ark. 294; 50 Ark. 185; 55 Ark. 112; 71 Ark. 105.

4.   If any agreement was entered into with reference to improvements, it was rescinded by the subsequent division of the land.

WOOD, J., (after stating the facts.)   First.   There was evidence tending to prove that in the spring of 1896 L. L. Seawell and his mother, A. E. Seawell, made a division of the E. ½ of the E. ½ of the S. E. ¼ of the S. E. ¼ of section four, township 18 north, range 16 west, containing ten acres, which they held in com-

mon. The proof tended to show that L. L. Seawell was to take the west half of the ten acres, and A. E. Seawell was to take the east half thereof; that, in pursuance of such agreement, A. E. Seawell executed her deed to L. L. Seawell. The strongest direct evidence of the fact that there was such a division was the testimony of one Mrs. L. L. Young, who testifies on this point as follows:

"In 1896, in the spring, I think about April, my mother (Mrs. A. E. Seawell) and the defendant L. L. Seawell had a division of the land, by which the defendant L. L. Seawell was to take the west half of the ten-acre tract, and my mother was to have the east half. I was present when my mother signed the deed to the west half, and the defendant was there also. Mother made the remark, after she signed the deed, that her mind was easy now, that the land was divided, and she had her property to herself." She also testified that in a conversation with defendant, when A. C. Seawell and Katherine Seawell were present, she said to defendant: "I can tell you just exactly what brought about the division. Mr. Layton wanted you to give him a deed of trust on the place, and you wanted mother to sign it, and she would not do it." And she said: "I will tell you what I will do: I'll give you the west half, and I will take the east half," and they agreed to it; and she made you a deed to the west half, and when she called on you for a deed to the east half you told her you would not make it except for her lifetime, and she would not have it, and the defendant, L. L. Seawell, said: "I know it."

Mrs. Young is corroborated by A. C. Seawell and Katherine Sowell, as to this conversation, and the exact words spoken by L. L. Seawell when the conversation occurred. In addition to the positive testimony of Mrs. Young that the division took place, there is much testimony tending to prove that, after Mrs. A. E. Seawell had made the deed to the west half of the ten acres to her son L. L. Seawell, she treated the east half thereof as her own exclusive property. Various acts and declarations of hers, while she was in possession of the tract in controversy, were brought out in the evidence, tending to show that she claimed to be the sole owner of this tract. These acts and declarations were admissible to show the character and extent of her possession and claim. I Enc. Ev. 680, and authorities cited; *Ricard* v. *Williams, 7*

Wheat. 59; 24 Am. & Eng. Enc. Law (2 Ed.), 690, and cases cited; *Knight* v. *Knight,* 178 Ill. 553.

But it could serve no useful purpose to elaborate the facts. Suffice it to say, there was ample proof to support a finding that Mrs. A. E. Seawell and L. L. Seawell made a division of the ten-acre tract held by them in common, and that the understanding was that she, A. E. Seawell, should get the east half (the 5 acres in controversy), and that he, L. L. Seawell, should get the west half, and that such understanding was consummated by his taking possession of the west half, and her retaining possession of the east half. Such being the understanding, and effect having been given to it by the reciprocal giving and taking of possession, L. L. Seawell was, in equity, bound by it, although he had not executed a deed evidencing the transfer of title. 21 Am. & Eng. Enc. Law (2 Ed.), 1139 and cases cited. She performed her part of the agreement, not only by surrendering possession to the west half, but by executing a deed therefor, and she confined her possession and claim thereafter to the east half.

A voluntary partition or division of lands by cotenants may be established by any competent evidence. 21 Am. & Eng. Enc. Law, 1141; *Allen* v. *Seawell,* 37 U. S. App. 436; *Goodman* v. *Winter,* 64 Ala. 410; *Markoe* v. *Wakeman,* 107 Ill. 251.

2. The evidence clearly shows that Nowlin purchased the land in controversy from L. L. Seawell with notice of appellees' claim. He therefore acquired no rights under his deed from L. L. Seawell as against them. It follows that the court was correct in the finding that A. E. Seawell died seized and possessed of the lands in controversy, and that appellees, as her heirs at law, were entitled to the possession of six-sevenths interest in said land.

3. It is contended by appellants that about the year 1890 A. E. Seawell made an agreement with the appellant L. L. Seawell by which he was to place certain improvements on the land in question at his own expense, she to have the use and occupancy of the same during her lifetime, and then he to have her interest in the lands. It is sufficient to say of this contention that, if there was such an agreement, it was afterwards voluntarily annulled by the parties to it when they divided the land between them. It is reasonable to conclude that all questions of that kind were con-

sidered when the division was made. Moreover, it is not clear from the facts and circumstances in proof that the improvements which appellant L. L. Seawell put upon the land in controversy were made with his own means. There is evidence tending strongly to show that A. E. Seawell had furnished money to her son, and that he was in debt to her when she died. It is by no means clear that she did not contribute her part to whatever improvements were put upon the land prior to the division between them.

The chancellor found that the rents and profits of said land collected by the appellant L. L. Seawell offset the taxes and improvements made by him. And we are not prepared to say, after a careful consideration of the facts in the record, that such a finding is clearly against the preponderance of the testimony.

Affirmed.