## COTTON *v.* CITIZENS' BANK.

### Opinion delivered January 23, 1911.

1. APPEAL AND ERROR—CONCLUSIVENESS OF FINDINGS OF CHANCELLOR.— Findings of fact made by a chancellor will not be disturbed on appeal unless they are against the preponderance of the evidence. (Page 574.)

2. EVIDENCE—DECLARATIONS OF DECEDENT.—Where a parent bought land and took title in the name of his son, and thereafter died, his contemporary declarations may be proved to show that he was making an advancement. (Page 574.)

3. DESCENT AND DISTRIBUTION—FATHER AS HEIR OF SON.—Where a father advanced the money for the purchase of land, and took deed in the name of the son, upon the death of the son without issue, the land vests in the father in fee. (Page 574.)

4. ADVANCEMENT—PRESUMPTION.—A purchase of land by a father and conveyance to his son by his direction is, in the absence of proof to the contrary, presumed to be an advancement, and not a trust. (Page 575.)

Appeal from Little River Chancery Court; *James D. Shaver,* Chancellor; affirmed.

Z. R. Cotton, Charles B. Cotton, Thomas L. Cotton, Luella Weston (born Luella Cotton), Gilbert Henry Cotton and William Elmer Cotton instituted this suit in the chancery court against the Citizens' Bank and numerous other defendants to recover the southwest quarter of the southeast quarter of section 15, township 12 south, range 32 west, in Little River County, Arkansas.

They allege that the tract of land in controversy was divided into blocks and lots, and is a part of the town of Foreman. That to bring a separate suit against each person claiming or holding lots adversely to the plantiffs would entail a great and unnecessary amount of expense because the title and condition of all as respects this lawsuit are identical; and that a resort was had to a court of equity to the end that the rights of all parties may be determined in one action. From the abstract of appellants, we take the following as a substantially correct statement of the issues raised by the complaint and answer:

"The plaintiffs further allege that they are the children of Z. L. Cotton, who died intestate on or about the 4th day of September, 1906, and who was the father of Clayton Cotton, deceased, who died on the 10th day of April, 1893, intestate, and had never been married. The plaintiffs and appellants are the brothers and sister and the heirs at law of the said Clayton Cotton, who died seized and possessed of the land in controversy herein.

"The plaintiffs in their complaint further allege that, upon the death of the said Clayton Cotton, Z. L. Cotton, the father of the said Clayton Cotton, inherited from his son, Clayton Cotton, a life estate in the land in controversy; the mother of Clayton Cotton died before his father died, and upon the death of Z. L. Cotton, the father of Clayton Cotton, the life estate in said land terminated, and the brothers and sister, the heirs at law of the said Clayton Cotton, became the owners in fee simple of the land, towit: Southwest quarter (S. W. ¼) of southeast quarter (S. E. ¼) of section fifteen (15), township twelve (12) south, in range thirty-two (32) west.

"The plaintiffs state that on the 2d day of July, 1901, the said Z. L. Cotton sold his life estate in said tract of land to E. Schuman, who afterwards mapped this land into lots and blocks as part of New Rocky Comfort, and who sold the lots to defendants or to persons under whom the defendants claim.

"The plaintiffs claim title to the said tract of land as follows, towit:

"1. On the 1st day of December, 1883, the United States patented the land to Sarah Gray, this tract of land among other lands.

"2. On the 29th day of November, 1879, Sarah Gray conveyed this land to Allen C. Hill by deed of conveyance which was recorded in the recorder's office on the 29th day of November, 1880.

"3. On the 5th day of November, 1880, A. C. Hill and his wife, Honorine Hill, conveyed the land in controversy to Clayton Cotton, which deed was recorded in the recorder's office of Little River County.

"The plaintiffs allege that by reason of the death of Clayton Cotton, who at the time had never been married and had no issue capable of inheriting his estate, and by reason of the death of his mother first, and then his father, which terminated the life estate and vested the fee in the plaintiffs.

"The defendants in their answer deny all the allegations in the plaintiffs' complaint, and state, if Clayton Cotton was the owner of said land, the same was an ancestral estate coming to the said Clayton Cotton by his father, Z. L. Cotton, and upon the death of Clayton Cotton, the said Z. L. Cotton, his father, became the owner of said land in fee simple.

"The defendants admit that on the 2d day of July, 1901, Z. L. Cotton executed a quitclaim deed to E. Schuman, and allege the same was without the knowledge of the other defendants named herein.

"The defendants admit that on the 5th day of November, 1880, Allen C. Hill and his wife executed a deed purporting to convey the land to Clayton Cotton, which deed was recorded in record book 'G,' page 638, in the recorder's office of Little River County; but defendants allege that Z. L. Cotton, the

father of Clayton Cotton, furnished and paid all of the consideration for said conveyance.

"These defendants say that if the court should find that the equitable as well as the legal title to said land passed to the said Clayton Cotton, and then said Clayton Cotton did not hold the said land in trust for his father, the said Z. L. Cotton, the defendants allege that the said conveyance was an ancestral estate coming to the said Clayton Cotton by his father, the said Z. L. Cotton, and that he became the owner thereof in fee simple.

"The defendants admit that the said Clayton Cotton died without ever having married, and without any issue of his body capable of inheriting his estate; but deny that, by reason of the death of his father and mother, the title to said lands vested in or passed to plaintiffs, or any of them, and allege that they are the owners of the respective lots mentioned by plaintiff in their complaint."

The facts will be sufficiently stated in the opinion. No objection was made to the jurisdiction of the chancery court in the court below, and none is urged here. The chancellor found from the testimony that the lands in controversy were owned by Clayton Cotton, as an ancestral estate, coming from his father, Zara L. Cotton, and that, upon the death of Clayton Cotton without issue, Zara L. Cotton, his father, became vested with title in fee simple to the lands in controversy, and that plaintiffs have no interest therein for the reason that Zara L. Cotton had conveyed the same before his death to the grantors of the defendants.

A decree was accordingly entered dismissing the complaint of the plaintiffs for want of equity, and they have duly prosecuted an appeal to this court.

*E. F. Friedell* and *L. A. Byrne,* for appellants.

1. The deed from Hill to Clayton Cotton recites a consideration of $75.00 paid by the latter. The presumption of law is that he acquired an estate by purchase, and the burden rests upon the appellees to vary this deed and overcome this presumption by proof that is full, clear and convincing. 82 Ark. 569; 89 Ark. 182; 79 Ark. 418; 71 Ark. 494; 48 Ark. 169; 57 Ark. 632; 18 Ark. 63. If it be conceded that Z. L. Cotton made the statements as testified to by Dollarhide, they are not admissible to

change the plain import and legal effect of a deed absolute in its terms. 86 Ark. 448; 83 Ark. 186; 66 Ark. 229; 62 Ark. 26; 14 Ark. 304; 20 Cyc. 1225 and authorities cited.

2. The title to this land is not impressed with the character of an ancestral estate, but that of a new acquisition. 15 Ark. 556. In so far as this case has been followed by *Galloway* v. *Robinson,* 19 Ark. 396, it stands as the construction of the law of descent in this State, but in other respects it has been repeatedly overruled by subsequent decisions. 31 Ark. 103; 52 Ark. 55. To be ancestral, the title to an estate must necessarily come *mediately* or *immediately* through some ancester or kindred of the blood, either by descent, deed or will. If it comes by will or deed from a stranger, then the land becomes a new acquisition. 15 Ark. 556; 75 Ark. 19.

*J. D. Head* and *Glass, Estes, King & Burford,* for appellees.

1. The recital of a consideration of $75.00 paid by Clayton Cotton is only *prima facie* true, and is overcome by the testimony of both Dollarhide and Z. R. Cotton, to the effect that Z. L. Cotton paid it—and indeed there is no denial that he paid it. 71 Ark. 494.

2. The consideration for the deed having been paid by the father, the land became an ancestral estate in the hands of the grantee, Clayton Cotton. Kirby's Dig. §§ 2645, 2647; 15 Ark. 555; 19 Ark. 402. And this case is not at variance with *Magness* v. *Arnold,* 31 Ark. 103, and *Hogan* v. *Finley,* 52 Ark. 55. The Magness case distinctly recognizes the doctrine that payment of the consideration by the father for the child results in an ancestral estate, and there was no proof that he paid it, while in the Hogan case the land was unquestionably a new acquisition, being a gift or donation from the State, without consideration. See further, 69 Ark. 237; 27 Am & Eng. Enc. of L. (2 ed.), 301; 144 Ind. 410.

HART, J., (after stating the facts). It is claimed by the plaintiffs that A. C. Hill derived title to the lands in controversy by mesne conveyances from the United States, and this may be assumed to be true. On the 5th day of November, 1880, A. C. Hill and his wife conveyed the land in controversy to Clayton Cotton, and the deed was duly recorded. At the time

Clayton Cotton was 12 or 14 years old. The consideration recited in the deed was $75, the receipt of which is acknowledged.

For the plaintiffs, Z. R. Cotton testified that he was present when the deed from A. C. Hill and wife to Clayton Cotton was executed. That his father said that he wanted his son, Clayton Cotton, to keep the land, as the money which was paid for it came from Clayton Cotton's mother. That she owned a tract of land in Montgomery County, Arkansas, which she sold before her death, and that he, Zara L. Cotton, got the money for it. That he wanted Clayton to keep this tract of land in remembrance of receiving something from his mother. That previous to this his father, Zara L. Cotton, had given to another brother and to himself 40 acres of land each. Witness further testified that Clayton Cotton was a half-brother to him and the other plaintiffs, being a son by the first wife of Zara L. Cotton. That the mother of Clayton Cotton died in 1868, and that Clayton Cotton never married, and died on April 10, 1893, age 25 years, in the State Insane Asylum. He does not state whether or not E. W. Dollarhide was present when the deed from A. C. Hill was executed to Clayton Cotton.

For the defendants, E. W. Dollarhide states that he was present when the deed from A. C. Hill and wife to Clayton Cotton was executed. He states that Zara R. Cotton was not present, and that the only persons present were Zara L. Cotton, A. C. Hill and himself. He stated further that both Hill and Cotton said that the former was indebted to the latter, and wished to pay the debt by conveying the land in question in satisfaction of it. That Cotton did not want the deed made to himself on account of being in debt, and that they both asked him about the advisibility of making the deed to Cotton's wife. That he advised them against that course, and that, after some discussion, they concluded to make the deed to Clayton Powell, who was at the time 12 or 13 years old, and that the deed was so executed, the consideration for the deed being the debt due by A. C. Hill to Zara L. Cotton: He further testified that at that time Clayton Cotton had no means of any kind. He also stated that he is now a practicing attorney, but was not when the deed was executed, but that Cotton and Hill were.

On the 2d day of July, 1901, Zara L. Cotton and wife

by quitclaim deed conveyed the land in controversy to E. E. Schuman, and the defendants derived their title by mesne conveyances from her.

Zara L. Cotton died on the 4th day of September, 1906, and this action was commenced on August 10, 1909. It will be noted that Clayton Cotton had no means with which to purchase the land, and it is not claimed that he paid anything for it. The plaintiffs claimed that the purchase money of the land was received from his mother's estate. On the other hand, defendants claim that it was paid by the father. E. W. Dollarhide and Zara R. Cotton were the only two witnesses who testify on that point, and they flatly contradict each other. Both their statements can not be true. Zara R. Cotton was a party to the suit and interested in the result. In any event the chancellor found this disputed question of fact in favor of the defendants; and it is well settled in this State that the findings of fact made by a chancellor will not be disturbed on appeal unless it appears that they are against the preponderance of the evidence.

But it is insisted by counsel for plaintiffs that the testimony of E. W. Dollarhide is incompetent within the rule announced in *Waldroop* v. *Ruddell,* 96 Ark. 171; *Seawell* v. *Young,* 77 Ark. 309; *King* v. *Slater,* 94 Ark. 589, and other like decisions of this court where it is held that declarations of a decedent going to show the character and extent of his possessions are competent, but that his declarations as to title are not competent because they are self-serving declarations. We do not agree with counsel in their contention. Dollarhide testifies that he was present when the contract was made for the purchase of the land, and his testimony is as to conversations and transactions that took place between Hill, the vendor, and Cotton, the purchaser of the land, at the time the contract of purchase and sale was made. It was testimony then of matters within his own personal knowledge. Such testimony was admitted in the case of *Eastman* v. *Powell,* 51 Ark. 530, where the father purchased the land and took the deed in the name of his daughter, for the purpose of showing an advancement and to contradict the claim that there was a resulting trust in favor of the father. See also *Robinson* v. *Robinson,* 45 Ark. 481.

It follows that the decree of the chancellor must be af-

firmed; for the law of the case is settled by the decision in the case of *Galloway* v. *Robinson*, 19 Ark. 396. There the court held:

"Where the father advances the money for the purchase of lands and takes the deed in the name of the son, upon the death of the son without issue, the lands vest in the father in fee. In such case the lands come to the son 'on the part of the father' by gift, and were not a new acquisition by the son, within the contemplation and meaning of the act of descents and distributions of this State."

It is, however, contended by counsel for plaintiffs that this case is overruled by later decisions of this court. In the first case referred to, *Magness* v. *Arnold*, 31 Ark. 103, the court did not decide whether the land was ancestral or a new acquisition because it was not necessary to do so. If the land was ancestral estate, it came from the father, and so the mother only took a life estate whether it was an ancestral estate or a new acquisition. Hence the court did not decide that question, and a careful reading of the opinion will show that fact.

In the case of *Hogan* v. *Finley*, 52 Ark. 55, the land was donated under the laws of the State. It is true the father paid the donation fees and had the deed made to his son; but the court held that, the father not having paid any consideration for the land, it could not be a gift from him and in consequence a new acquisition. So in the case of *Wheelock* v. *Simons*, 75 Ark. 19, the daughter took as a purchaser under a will from a stranger to the blood, and the court held in such case that the estate was a new acquisition.

This court has frequently held that the purchase of land by a father and conveyance to his son by his direction is, in the absence of proof to the contrary, presumed to be an advancement, and not a trust. *White* v. *White*, 52 Ark. 188; *Eastham* v. *Powell*, 51 Ark. 530; *Bogy* v. *Boberts*, 48 Ark. 17; *James* v. *James*, 41 Ark. 301; *Kemp* v. *Cossart*, 47 Ark. 62.

"An advancement is an irrevocable gift *in praesenti* of money or property, real or personal, to a child by a parent to enable the donee to anticipate his inheritance to the extent of the gift." 14 Cyc. 162.

Advancements are chargeable to the child in the distribution of the donor's estate. *Goodwin* v. *Parnell*, 69 Ark. 629; *Culber-*

*house* v. *Culberhouse*, 68 Ark 405; *Kemp* v. *Cossart*, 47 Ark. 62.

We are of the opinion that the land in controversy came to Clayton Cotton from his father within the meaning of our statutes of descents and distributions, as construed in the case of *Kelley's Heirs* v. *McGuire*, 15 Ark. 555, and that, upon the death of Clayton Cotton, the title in fee vested in his father, Zara L. Cotton. Zara L. Cotton conveyed the land by quitclaim deed to E. E. Schuman, and the defendants derived their title by mesne conveyances from her. Hence the plaintiffs have no title to the lands, and, as above stated, the decision of the chancellor was correct. The decree will be affirmed.