LEONARD *v.* LEONARD.

Opinion delivered January 8, 1912.

1. DIVORCE—PROOF OF ADULTERY.—The charge of adultery may be sufficiently proved by evidence leading to an inference of guilt; and while the circumstances need not be such that an inference of guilt is the only possible conclusion that can be drawn therefrom, yet the facts must be such as to lead a just and reasonable man to the conclusion of guilt, and they are not sufficient if they merely justify a suspicion of guilt, in the absence of other incriminating circumstances. (Page 528.)

2. SAME—PROOF OF ADULTERY.—Adultery may be established by the fact that the parties occupied the same room at night or the same bed, in the absence of an explanation of the incriminating circumstances. (Page 529.)

3. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— A chancellor's finding of fact will not be set aside on appeal unless it is clearly against the weight of the evidence. (Page 529.)

4. SAME—EFFECT OF APPEAL UPON SUBSEQUENT PROCEEDING.—Where the lower court rendered an interlocutory decree of divorce, but appointed a master to ascertain the amount of property that the defendant owned, and directed the master to make report at a subsequent date, and the defendant took an appeal with supersedeas bond before the court had made any order concerning the property, the appeal did not bring up proceedings had after the appeal was granted. (Page 529.)

5. CERTIORARI—WHEN INAPPLICABLE.—Certiorari can not be used as a substitute for an appeal to correct mere errors or irregularities of procedure of inferior courts. (Page 531.)

6. HUSBAND AND WIFE—EFFECT OF WIFE RELINQUISHING RIGHTS TO HUSBAND'S PROPERTY.—A wife's agreement to relinquish all rights to her husband's property, if made for a wholly inadequate consideration, will be set aside on that account. (Page 531.)

7. DIVORCE—ALIMONY.—An agreement on part of a husband to pay his wife a reasonable amount for her support during her temporary absence will not preclude her from recovering alimony in case she is subsequently granted a divorce from him. (Page 531.)

8. HUSBAND AND WIFE—AGREEMENT OF SEPARATION—VALIDITY.—A contract between husband and wife for the latter's support and maintenance will not be enforced by the courts unless separation has already taken place or an immediate separation is contemplated. (Page 531.)

Appeal from Independence Chancery Court; *George T Humphries*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

This is an action by appellee against appellant for divorce, the complaint alleging, among other things, adultery on the part of appellant with Pearl and Wretha Gilbert and Lillie Flowers; also indignities on the part of appellant towards appellee rendering her condition in life intolerable.

The appellant denied each of the allegations of the complaint, and alleged that the women whom he had in his house had been doing his cooking, washing and housework, which he was of necessity compelled to hire done after his wife left him. He set up that the plaintiff, appellee, agreed with defendant that for and in consideration of the sum of $25 she would forever abandon him and release all and singular her claim to any and all property, and that she signed a written release to that effect, voluntarily and with full knowledge of all its provisions and its effect; that said sum of $25 was paid and accepted in pursuance of the agreement.

The court granted a decree of divorce on the ground that appellant had committed adultery with Pearl and Wretha Gilbert. At the time the decree of divorce was granted the court appointed a master to take evidence to ascertain the amount of appellant's estate, and ordered that, if it should be ascertained that same is not susceptible of division, to report same to the court "to the end that, if necessary, an order of

sale be made." Exceptions were duly saved to the decree, and an appeal was prayed and granted, and appellant filed in due time a supersedeas bond.

Thereafter, on June 10, 1911, upon the report of the master being made, the court ordered and decreed "that plaintiff have and recover judgment against the defendant" for certain lots in the city of Batesville, and divesting all right, title and interest in said property out of defendant and vesting it in the plaintiff for her natural life, and further decreed "that plaintiff have and recover judgment of and from the defendant, N. B. Leonard, the sum of $347.03, with 6 per cent. interest from date until paid." This personal money judgment was upon the report of the master that defendant was the owner of personal property of the value of $1,041.10, which was not susceptible of division in kind.

On the 4th day of July, 1911, the clerk of this court issued a writ of certiorari to the clerk of the Independence Chancery Court bringing up the record of the decree rendered by the chancery court on June 10, 1911, making disposition of the property above-named and entering a judgment for a sum of money against the appellant as above stated. From the decree of the court granting the appellee an absolute divorce the appellant duly prosecutes this appeal.

The facts are substantially as follows: It appears that when appellant married appellee the latter had a daughter about fifteen years of age, and that the daughter and appellant could not get along. The conduct of the daughter was so distasteful to appellant that he informed his wife that he and her daughter could not live in the same house. This was some seven or eight months after appellant and appellee were married. They then entered into the agreement set up by appellant in his answer, which is as follows: (Omitting formal part). "Julia Leonard, party of the second part, hereby agrees, upon the payment to her by the said N. B. Leonard, party of the first part, the sum of twenty-five ($25) dollars, the receipt whereof is hereby acknowledged; also that the said N. B. Leonard, party of the first part, shall on this day turn over to her, the said Julia Leonard, sixteen chickens and one cook stove; that she, the said Julia Leonard, will relinquish and abandon all her rights in and to all of the property, both personal and real, now

owned by the said N. B. Leonard, or which might be owned in the future by the said N. B. Leonard, or any notes or accounts or choses in action now owned or to be owned by the said N. B. Leonard."

(Dated and signed by both parties.)

Appellee testified concerning this that appellant "said my daughter and he couldn't live in the same house, and the agreement was, I was to rent another house and take my daughter away until she married, and then I could come back home. I didn't think anything else, only I was to go back to his house as soon as my daughter was married. We agreed that I would rent this house, and after her marriage come back to him. I went away in a good humor with the intention of going back. After I left he got a woman there, but I didn't think anything about it, as his daughter was with him. After she left, he got two other women, and kept them nearly all winter and summer. The girl was right young, fifteen years old, I heard, and the other woman was her mother."

It was shown on behalf of the appellee that the first woman appellant had in his house after the agreement to live apart was of bad character. There was also testimony to the effect that the general reputation of the other two women for chastity was bad. There was testimony to the effect that the younger woman, Pearl Gilbert, was seen sitting on appellant's lap at 11 o'clock at night; this, however, was after the institution of the suit. The testimony of Pearl Gilbert, on cross examination, showed that she slept in the same room that appellant slept in; that she slept in this room while her mother slept in the other room; that when she was not sleeping in appellant's room she would sleep in the other room with her mother, but that when her mother was not there she would sleep in the same room where appellant slept, and that no one slept in the other room. It was shown that the elder woman, Wretha Gilbert, before she went to live with appellant, had a bastard child. It was also shown in evidence that, before the younger woman went to live at appellant's, a certain party had been indicted for having sexual intercourse with her.

One witness testified that early one Sunday morning she went to appellant's to get some lard; that when she went in appellant's son-in-law was sitting on the cot with him, looking

like he was paying his bill, and Pearl Gilbert was in appellant's bed asleep; that at that time Pearl's mother was in the back room in bed; it was early in the morning.   There was testimony tending to show that appellant had been seen to hug and kiss Pearl Gilbert; that Wretha Gilbert early one morning was seen in appellant's room sitting on the bed with nothing on except a little knit shirt and an underskirt; that she looked as though she had been in the bed.

The evidence tended to show that appellant kept Pearl Gilbert living in his house with him after he had heard a number of witnesses testify that her reputation for chastity was bad. Appellee, among other things, testified that appellant wanted her to get a man friend and make $5.

The above are substantially the facts as they were developed on behalf of appellee.

The testimony on behalf of appellant was to the effect that he had never had any sexual intercourse with any one after his wife went away from him except appellee herself.   He denied specifically, in his testimony, having had any sexual intercourse with any of the women mentioned in the testimony on behalf of appellee.   He said that his wife's daughter was the cause of her leaving him; that he was not willing for her to leave, and repeatedly requested her not to do so.   When she went to leave, she said:   "If I would give her $50 and a cooking stove I had and sixteen chickens, she would sign a deed to me for her interest in my property."   Continuing, appellant testified:   "I told her that I would give her $25 if she would give me a bill of sale to her right in my property, and that I would also give her the chickens and the stove.   She accepted this proposal, and we executed the agreement," (which agreement has already been set out.)

Another witness testified that he was present on the day the contract between appellant and appellee was executed; that the contract was talked about, and it was entered into as though it was satisfactory.   The witness said that appellant paid appellee $25 there in his office.   Another witness said that appellee signed the contract of her own free will.

There was testimony that appellant was of good character, and his general reputation was good, and that he kept a store, and the best people of the town traded with him, etc.   He

denied, in his testimony, all of the charges of improper conduct that had been alleged against him by appellee, and stated that he was compelled to have these women in his house after appellee left him in order to do his household work, such as cooking, washing, keeping house, etc. It was shown that the women were recommended to him by his son-in-law, who informed appellant that he had made inquiry about the women, and that it was reported to him that they were among the nicest people in their neighborhood.

Pearl Gilbert testified on behalf of appellant that she worked in the store and did his housework; that she went there with her mother; that her uncle had asked appellant to give her a home. He had never mistreated her in any way; had never had sexual intercourse with her; that she had never seen any misconduct between appellant and her mother, nor between him and any other woman. She denied that appellant had ever hugged and kissed her, and she and other witnesses testified that it was impossible for appellant to have been seen hugging and kissing her from the position where some of the witnesses on behalf of appellee testified that they saw him doing so.

*John J. Barnwell* and *McCaleb & Reeder,* for appellant.

1. The evidence is not sufficient to establish adultery. The occurrence testified to by Cypert was, if true, manifestly after the suit was instituted and therefore incompetent. 4 Edw. (N. Y.) 296. The proof of adultery is absolutely lacking, whereas it should be clear and positive. 80 Ark. 37; 14 Cyc. 694, and notes 76, 77, 78, 79, 80; *Id.* 695 and notes.

2. The court erred in awarding appellee one-third of appellant's property because she voluntarily, for a valuable consideration accepted by her, released all right or claim in or to his property. 71 Me. 562; 63 Me. 122; 31 Cal. 273; 9 Cal. 479; 122 N. Y. 567; 177 N. Y. 7; 116 N. Y. 635; 113 N. Y. 427; 107 N. Y. 677; 102 N. Y. 552; 72 Conn. 217; 26 Conn. 266; 8 Ga. 341; 26 Ia. 578; 25 Ia. 350; 104 N. C. 613; 94 N. C. 527; 37 Mich. 563; 73 Cal. 425; 24 La. Ann. 437; 11 Wis. 126.

3. Appellant having within apt time after the rendition of the decree of December 10, 1910, filed a supersedeas bond which was duly approved, the court was without jurisdiction of the action after so superseded and pending the appeal, and

exceeded its jurisdiction in entering the decree at the June term, 1911.    It is void in so far as it attempts to give judgment against appellant for $337.03 as being one-third of his property, after a finding by the court and master that he was the owner of personal property of the value of $1,041.10, and that it was susceptible of division in kind.   Kirby's Digest, §§ 1219, 1216; 70 Tex. 369; 21 Fla. 508; 12 Lea (Tenn.) 109; 148 Ind. 389; 48 Ia. 568; 98 N C. 193; 50 Me. 253; 39 Me. 216; 36 Me. 16; 45 Mo. 209.

*Sam A. Moore*, for appellee.

1.   There is sufficient evidence to show the adulterous disposition of the appellant, as well as ample opportunity for the repeated commission of the offense.   Adultery is sufficiently established by the evidence.   14 Cyc. 694; *Id.* 605; 80 Ark. 37; 4 Enc. of Ev. 755, 756, 761; 9 Am. & Eng. Enc. of L. 748.

2.   Appellee is entitled to one-third of appellant's personal property absolutely, regardless of debts, and one-third of his real estate for life.   64 Ark. 519, 522.

3.   The judgment of the trial court at its June term, 1911, is valid.   94 Ark. 485.

Certiorari can not be used as a substitute for appeal.   91 Ark. 64.   See also 58 Ark. 250; 30 Ark. 148; 21 Ark. 264; 23 Ark. 107.

WOOD, J., (after stating the facts).   I.   As to whether or not appellant committed adultery as found by the chancery court was purely a question of fact.   The rules of law which should govern in the consideration of this case are well stated in 14 Cyc. pp. 693-6, as follows:

"The charge of adultery may be sufficiently proved by evidence of circumstances leading to an inference of guilt.   It is impossible fully to indicate the circumstances which will lead to such a conclusion, because they may be infinitely diversified by the situation and character of the parties, and by many other incidental matters which may be apparently slight and delicate in themselves but which may have most important bearings in the particular case.   While the circumstances need not be such that an inference of guilt is the only possible conclusion that can be drawn therefrom, yet the facts must be such as to lead a just and reasonable man to the conclusion of guilt.   They

are not sufficient if they merely justify a suspicion of guilt, in the absence of other incriminating circumstances. * * * So where the circumstances adduced in support of the charge are capable of two interpretations, one of which is consistent with innocence, the divorce should not be granted.

"If an adulterous disposition on the part of defendant and the alleged paramour is shown, and it appears that there was an opportunity for them to commit the offense, these facts are sufficient to establish adultery. * * * To have this effect the opportunity must occur under incriminating circumstances. * * * Adultery may be established by the fact that the parties occupied the same room at night or the same bed, in the absence of an explanation of the incriminating circumstances."

The finding of the chancellor upon the conflicting evidence in this record is most persuasive with us. We are of the opinion that his finding of fact was not against the clear preponderance of the testimony, and it is a well-settled rule of this court not to reverse unless the finding of the chancery court is clearly against the weight of the evidence: *Hinkle* v. *Broadwater*, 73 Ark. 489; *Whitehead* v. *Henderson*, 67 Ark. 200; *Norman* v. *Pugh*, 75 Ark. 52; *Cunningham* v. *Toye*, 97 Ark. 537; *Cotton* v. *Citizens Bank*, 97 Ark. 568.

The preponderance of the evidence justifies the conclusion that the appellant had the adulterous disposition, and that he often had the opportunity to commit adultery with the women whom he kept in his house during the absence of his wife, and that the testimony fails to give any satisfactory explanation of the circumstances tending to incriminate him. According to the testimony which the chancellor accepted, and which we are unable to say was not the truth, in regard to the conduct of appellant, he was seen occupying attitudes with reference to the women whom he had brought into his home that were not consistent with a man of virtue or one who had a proper regard for social purity.

Without going into detail, it is sufficient to say that we are of the opinion that the conclusion of the chancellor is correct, and that the decree granting the appellee an absolute divorce should be affirmed.

II. The supersedeas bond executed on January 9, 1911, did not have the effect to supersede the judgment of the court

rendered on December 10, 1910, with reference to the disposition of the property of appellant, for the decree, in that respect, shows that it was not intended to be final, but that the court continued the hearing concerning the disposition of the property until a future term of the court. The law itself (section 2684, Kirby's Digest) provides as to what part of the husband's property shall go to the wife in case of an absolute divorce, and the recitals of the decree show that the chancellor was not advised as to the amount of property, real and personal, possessed by the appellant, and that he therefore appointed a master with directions to take evidence in order "to ascertain the amount of real estate and personal property of every kind and character now in the possession of and being owned by the defendant."

The decree, after showing the appointment of the master and certain directions to him, further recites as follows: "The defendant is instructed to assist and give the master such information as he may desire, and report his findings to this court on the 7th day of January, 1911, and, further: "Should said defendant's property be not susceptible to a division between plaintiff and defendant, that he so report to said court to the end that, if necessary, an order of sale may be made; that said inventory be made at once by the master."

These recitals show that there was no final decree of the court, as stated above, with reference to the disposition of the property at the time the decree for absolute divorce was rendered. The chancery court therefore was not without jurisdiction to render a final judgment disposing of the property of appellant at a subsequent term of the court. While the interlocutory decree of December 10, 1910, providing for the division or disposition of the property, was an adjudication of the rights of the parties as to the property of appellant that should go to the appellee, yet this adjudication did not, by the very terms of the decree, become final until something further had been done with reference to it.

Any objections that appellant may have had to a final decree, making disposition of his property, following the decree for absolute divorce and the interlocutory decree, should have been raised by proper exceptions to the master's report and the court's final judgment and decree thereon, and by appeal from

such final decree. Certiorari, even when properly issued, can not be used here to take the place of such appeal, and therefore the question as to whether or not the court erred in not making proper division of the property on final adjudication is not now before us. Certiorari can not be used as a substitute for an appeal to correct mere errors or irregularities of procedure of inferior courts. *Douglas* v. *Hamilton*, 91 Ark. 64; *Merchants & Planters Bank* v. *Fitzgerald*, 61 Ark. 605.

III. The agreement between appellant and appellee, relied upon by appellant as a disposition of the property between them, is voidable. Even if it were valid to make such an agreement, the consideration was wholly inadequate, and the agreement should be set aside on that account. According to the testimony of both appellant and appellee, this was not an agreement entered into for an immediate separation with a view of divorce; but, according to the testimony of the appellee (and this is not denied by the appellant), only the temporary absence of the appellee from bed and board was contemplated until such time as the daughter of the appellee should marry, and it was understood at first that after the marriage appellee should return to live with appellant.

The appellant himself testified that during this absence of his wife under the agreement he had had sexual intercourse with her, and that she was the only one with whom he had had sexual intercourse, showing that he still regarded the marital relations as intact.

The agreement, under all the circumstances, could not be considered anything more than an understanding by which appellant was to pay appellee a certain amount during her absence for support. Considered in any other light, the so-called agreement was *nudum pactum*. Where separation has already taken place, or where there is to be an immediate separation, the courts have recognized that husband and wife may contract with each other for the support and maintenance of the wife and making a disposition of the property to that end. But that is not this case; and, unless separation has already taken place or an immediate separation is contemplated, such contracts are null and void. See *Bowers* v. *Hutchinson*, 67 Ark. 15; *Spurlock* v. *Spurlock*, 80 Ark. 42; *Shirey* v. *Shirey*, 87 Ark. 175; *Pryor* v. *Pryor*, 88 Ark. 308.

The court did not err in ignoring the alleged agreement between appellant and appellee as to the disposition of his property.

The judgment is affirmed.