NORDEN *v.* MARTIN.

4-6130                                                149 S. W. 2d 550

Opinion delivered April 7, 1941.

*W. A. Leach,* for appellant.

*Peyton D. Moncrief,* for appellee.

SMITH, J.   Appellees recovered judgment for the value of certain timber alleged to have been cut and removed from fractional south half of section 36, township 7 south, range 4 west, in Arkansas county, of which land they were the owners, and from that judgment is this appeal.   The question in the case is the one of fact

whether the timber was cut and removed from the southeast quarter of this section or from the northeast quarter thereof, and appellants say in their brief that "The only question here at issue is the boundary line between the northeast quarter and the southeast quarter." The land in controversy is a part of Thedford's Island— made an island by the changing course of the Arkansas river.

Three surveyors ran the line between these two quarter sections, but their surveys do not coincide, and the question as to which was correct was submitted to the jury. The county surveyor ran this line, beginning at what he said was an established corner and blazed trees along its route. This line, according to his testimony, was run in conformity with the government field notes. According to this survey the timber was cut on appellees' land, and there is no controversy as to its quantity or value.

Frank Quertermous, a former county surveyor, ran the line, and made a map of the survey, according to which the timber was cut from appellees' land.

H. P. Stewart, a civil engineer, also made a survey, which challenged the accuracy of the other surveys, and placed the land from which the timber was removed on appellants' side of the dividing line.

These questions of fact were decided by the verdict of the jury, and the sufficiency of the testimony to support the finding is not seriously questioned.

It is insisted, however, that the jury's verdict was, or may have been, influenced and controlled by certain incompetent testimony. Lay witnesses, who claimed to know where the line had been located in former surveys, testified as to the location of the line. These witnesses testified in regard to an old fence row, referred to as the mulberry fence, which was the south line of what the witnesses called the White homestead. Appellees' testimony was to the effect that this old fence row was on the line between the two quarter-sections, and that the timber was cut on the land south of that line.

The insistence is that the court erred in permitting witness Bob Allen to testify as to statements made by White, long dead, who was appellants' predecessor in title, in regard to the location of this line. Counsel for appellees interrogated witness Allen as follows: "Q. Were you familiar with White's homestead down there? A. Yes, some. Q. Do you know where the south line of his land was? A. I know where he said it was. Q. Where was it—from the information you got? A. Where the mulberry fence was. Q. Did White claim any land south of that old fence row?" An objection to this question was overruled, but the question was not answered, whereupon the witness was cross-examined as follows: "Q. He told you—or did he tell you where his line was? A. Yes, he told me where his line run. Q. (Interrupting) Where did he tell you the line was? A. The old mulberry fence was the line."

It is our opinion that, if this testimony as to the mulberry fence being on the line was error, the error was invited, as the answer that the mulberry fence was the line was given in answer to a question of appellants' counsel. We think, however, that it was not incompetent. White was in possession of the land which he claimed to own, and this statement was in derogation of his title, as it tended to show the limit or boundary of his land.

At § 96 of the chapter on Boundaries, 8 Am. Jur., p. 814, it was said: "The declarations of a deceased former owner are admissible in evidence, but in order that they may be received, they must establish some fact, as a cornerstone or particular marked line, and they are not admissible when they are mere statements that certain lands lay within the boundary of such former owner, or that it was the same as had been conveyed in a certain deed, or merely as to facts which might tend to a general reputation as to the true boundary. Evidences of declarations by a deceased owner as to boundaries is inadmissible unless made while he was actually in possession and claiming it as owner."

In the case of *Cadwalader* v. *Price*, 111 Md. 310, there appears an extended note to the case in 19 Ann.

Cas. 551, in which the annotator says: "There is considerable authority to the effect that the declarations of a person who is deceased at the time of trial, made while he was in possession of land owned by him, and pointing out the boundaries thereof on the land itself, are admissible in evidence, where it does not appear that it was to the interest of the owner to misrepresent the facts as to the boundaries; and it need not appear affirmatively that the declarations were made in restriction of, or against, his own rights. (Citing many cases.)"

In the case of *Russell* v. *Webb,* 96 Ark. 190, 131 S. W. 456, the late Justice FRAUENTHAL said: "It is well settled that declarations and admissions of one in possession of land, relating to the title thereof and adverse to his interest, are admissible against him; and declarations and admissions of a person made while in possession, adverse to his title are admissible against his successors in interest and all who claim under him. We do not think the court erred in admitting this evidence." See, also, *Seawell* v. *Young,* 77 Ark. 309, 91 S. W. 544; *Cotton* v. *Citizens Bank,* 97 Ark. 568, 574, 135 S. W. 340; *Butler* v. *Hines,* 101 Ark. 409, 142 S. W. 509; *Cole* v. *Burnett,* 119 Ark. 386, 177 S. W. 1146; *Jefferson* v. *Souter,* 150 Ark. 55, 233 S. W. 804; *Meekins* v. *Meekins,* 168 Ark. 654, 271 S. W. 18.

It is not questioned that the testimony is sufficient to support the verdict and judgment, and we do not think the testimony of Allen calls for its reversal, and it is, therefore, affirmed.