METHENY *v.* METHENY.

5-1379                                        307 S. W. 2d 223

Opinion delivered November 11, 1957.

[Rehearing denied December 16, 1957.]

*McCourtney, Brinton, Gibbons & Segars,* for appellant.

*Howard A. Mayes,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellant, Weldon Metheny, challenges the correctness of the chancellor's determination that appellee, Geneva Metheny, was entitled to dower and homestead rights in a certain lot in the City of Paragould upon which she and her husband, Troy Metheny, resided for approximately nine years prior to his death in 1955.

The suit was begun by appellant in ejectment against appellee, his stepmother, but was transferred to chancery court by agreement. Appellant claimed title under a deed to him from Ben S. Turner and wife executed January 8, 1943. In her answer appellee asserted that Troy Metheny paid the consideration of $2,000 for said deed and had it made to his son, the

appellant, in contemplation of a divorce from his second wife and with the intent that his son should hold the land in trust for him. She also alleged that Troy Metheney "was in continuous occupancy of said lands from the date of its purchase until his death, that he paid all taxes thereon, that he exercised complete dominion and control over the same"; and that he and appellee were occupying the residence on the lot as husband and wife at the time of his death. She further alleged that the equitable title to said lands was in the estate of her deceased husband; that appellant merely held the record title as trustee for his father's estate; and that appellee, as the widow, had a homestead right in the dwelling and dower in the remainder of the land.

The chancellor rendered an exhaustive memorandum opinion as a basis for the decree dismissing appellant's complaint. The court held that under the facts presented there was no resulting trust in favor of Troy Metheny, but that appellee, as his widow, was entitled to assert her homestead and dower rights by reason of the fact that Troy Metheny had been in adverse possession of the property since 1943, and that appellee's possession since his death in February, 1955, could be tacked thereto. Appellant earnestly insists the chancellor erroneously found that Troy Metheny became the owner of said lot by adverse possession.

There is little dispute in the material facts. On January 8, 1943, Troy Metheny purchased the lot in question from Ben Turner and wife for $2,000 and had the deed made to appellant, his son by his first marriage, who was then nearly 19 years of age. At the time of the conveyance Troy Metheny was having marital difficulties with his second wife, Wilda. The lot was taken in the son's name to prevent her from obtaining an interest therein and he obtained a divorce on April 3, 1943. Immediately after purchase of the lot Troy Metheny moved his wholesale jewelry and barber supply business into a building then standing on the lot where he also resided until shortly before his marriage to appellee on February 11, 1946. He and appellee tore down the store building and erected a dwell-

ing in its place and a new business building on the lot in the Spring of 1946 or 1947. They lived in the residence and operated the business from the new store building from that time until his death and appellee has resided there since.

On February 21, 1946, Troy Metheny executed a 10-year lease of a part of the lot to Edward Taylor giving him the right to erect a small business building thereon with an option to purchase at the end of the term. No mention was made of appellant or any interest he may have had in the property in the written lease or in the negotiations relative thereto. Troy Metheny collected the rents under the lease, paid taxes on the lot and exercised complete control over the property treating it as his own from the time of the purchase until his death.

Appellant was in the military service from February, 1944, until May, 1946. He resided on the lot with his father a short time prior to his entry into military service and for a brief period immediately prior to his marriage in April, 1947, when he and his wife acquired their own home. He worked for his father as salesman on a commission basis from the time of his return from the service until 1950 when he moved to Jonesboro where he opened his own business. About seven months later he returned to Paragould and resumed work for his father until 1952 when he purchased a part of his father's barber supply business which he moved to and operated from a small building near his own home.

While there was some proof to the contrary, we think a clear preponderance of the evidence supports the trial court's conclusion that Troy Metheny exercised continuous and exclusive possession, supervision and control of the property from the time of its acquisition in 1943 until his death; and that such possession and control had no reference to any filial or parental duty to appellant whose own actions were at all times inconsistent with any claim of ownership on his part. In these circumstances it was concluded that Troy Metheny had acquired title to the lot by adverse posses-

sion, hence appellee was entitled to assert her dower and homestead rights therein.

The trial court based his decision on *Johnson* v. *Johnson,* 106 Ark. 9, 152 S. W. 1017. There a husband purchased land in the name of third parties in order to defraud creditors. He went into immediate possession and exercised control over the lands for six years in a manner similar to that of the deceased husband in the instant case. At his death his widow continued in possession for two years and this court held that such possession, in privity with his, gave his heirs title by adverse possession and entitled the widow to dower and homestead rights. A material difference in that case and this one is that the purchase by the husband there was in the name of third parties. And the rule is that a purchase of land by a father in the name of his son is, in the absence of proof to the contrary, presumed to be an advancement. *White* v. *White,* 52 Ark. 188, 12 S. W. 201; *Cotton* v. *Citizens' Bank,* 97 Ark. 568, 135 S. W. 340. So the critical issue is whether the evidence was sufficient to overcome this rebuttable presumption.

Appellant relies heavily on the *White* case, *supra,* where the court held the proof insufficient to overcome the presumption of an advancement. While the father controlled and improved the property there, it was also shown that the son was a minor and resided with the father during nearly all the time of the father's possession; and that the father declared at the time of the conveyance and on numerous occasions thereafter that an advancement was intended and the land belonged to his son. In *Forrest* v. *Forrest,* 208 Ark. 48, 184 S. W. 2d 902, a father conveyed land to his son to place it beyond the reach of an anticipated judgment creditor. We held the nature of the possession and control of the land by the mother and widow, coupled with that of the father and husband during his lifetime, sufficient to overcome the presumption that the father was holding in subordination to the original grant and to vest title in the widow by adverse possession under his will.

On the whole case we think the evidence was sufficient to overcome the presumption of an advancement to the appellant. Also that it was sufficient to sustain the chancellor's finding that Troy Metheny had title to the property by adverse possession at the time of his death, thus entitling the appellee to assert her homestead and dower rights in the property. The decree is, therefore, affirmed.