FORREST *v.* FORREST.

4-7406                                    184 S. W. 2d 902

Opinion delivered January 22, 1945.

*O. J. Fergeson,* for appellant.

*Caviness & George,* for appellee.

MILLWEE, J.   Appellee, Floy E. Forrest, is the widow of Foster G. Forrest, who prior to 1932 was the owner of 483 acres of land in Yell county, Arkansas.   In 1932, he executed a will in which he devised and bequeathed his entire estate to appellee, his wife, with a request for a division of any property that might be left at her death among five of their eight children, and that three of said children, Jim, Jewell and Nelia, be given $1 each. He further requested in said will that if his wife died before all of their younger children should become of age, then such children should receive schooling and support from the estate, and further directed his son, Vermon, to see that this was done.

Shortly after the execution of his will, Foster G. Forrest was threatened with a damage suit by his son-in-law, Carl Partin.  On January 6, 1933, upon the advice of his attorney, Foster G. Forrest executed and delivered two warranty deeds, in which appellee joined, to 203 acres of his land to his son, Vermon J. Forrest, for the purpose of reducing his lands to a homestead and placing his property beyond the reach of any judgment that might be rendered against him in the contemplated action for damages.   These deeds recited a cash consideration which was false and fictitious.   The lands conveyed by the deeds were known and referred to in the testimony as the "Mountain Tract," containing 100 acres next to the mountain, the "Graveyard Forty," there being a graveyard situated upon it, and the "River Place," the same being a 63-acre tract on Fourche river.

Appellant Vermon Forrest was 26 or 27 years of age, single and living with his parents at the time these deeds were executed.  He continued to live with his parents until sometime in 1936 when he married and moved out of the family home, but continued to assist with the farming operations.  After the execution of these deeds Foster G. Forrest continued to operate his farms in the same

manner as before, paying taxes and exercising general supervision over all his farm lands until his death on April 20, 1937.

On April 30, 1937, an order was entered in the probate court admitting the will of Foster G. Forrest to probate, and appellee was appointed administratrix of the estate with will annexed. Petitions were filed by Jim Forrest, Jewel Partin and Nelia Magness, children of appellee and Foster G. Forrest, in May, 1937, to revoke the order admitting the will of Foster G. Forrest to probate. Upon a hearing, these petitions were dismissed by the probate court on May 21, 1937. The appeal of these petitioners from this order was withdrawn on October 2, 1937, at their request and upon their announcement in open court that they had settled and disposed of any interest they had in the estate.

While the foregoing proceedings were pending in the probate court, on July 27, 1937, Jim Forrest, Jewell Partin and Nelia Magness filed suit in chancery court against appellants, Vermon J. Forrest and wife, and appellee, to cancel the deeds executed January 6, 1933, by Foster G. Forrest and appellee to Vermon J. Forrest, praying for sale of said lands and payment to each of the plaintiffs in that action an undivided one-eighth interest in the purchase money derived from the sale. This cause was dismissed upon plaintiffs' motion on November 1, 1937, the court finding the cause had been compromised and settled.

On October 2, 1937, Jim Forrest, a single person, Nelia Magness and Fay Magness, her husband, and Jewell Partin and Carl Partin, her husband, executed their quitclaim deed to Vermon J. Forrest to the 203 acres of land in controversy reciting a consideration of "$10 and other good and valuable consideration." A similar quitclaim deed was executed by C. G. Forrest and wife on November 24, 1937. The cash consideration mentioned in these deeds was false and fictitious and these deeds were delivered to appellee upon payment by her of approximately $1,600 to such grantors. According to appel-

lee, these deeds were held by her until January 20, 1941, when she had them recorded upon Vermon's representation to her that such recording was necessary before he could do anything about a division of all the lands of the estate among four of the children as requested in the will of their father.

The 63-acre tract known as the "River Place" was situated in the Nimrod dam and reservoir area, and the United States Government filed condemnation proceedings in the district court making appellee, appellants, and all other heirs of Foster G. Forrest parties defendant. These lands were sold to the Government for $2,500 in 1942, appellant, Vermon J. Forrest, receiving the proceeds of said sale.

This action was instituted by appellee, Floy E. Forrest, to set aside the two deeds of January 6, 1933, which were executed by Foster G. Forrest and appellee to appellant, Vermon J. Forrest, and for recovery of the $2,500 received by Vermon J. Forrest, from the sale of the 63-acre "River Place" to the United States. The original complaint alleged, among other things, the following grounds for cancellation: (1) That the deeds were executed wholly without consideration and for the purpose of placing the lands of Foster G. Forrest beyond the reach of any contemplated judgment creditor; (2) that appellant, Vermon Forrest, did not take title in fee simple, but as trustee for the use and benefit of Foster G. Forrest, grantor, who continued to exercise all the rights of ownership over said lands during his lifetime, and that title passed to appellee under the terms of the will; and (3) that Vermon J. Forrest never at any time during the lifetime of his father exercised any rights or control over said lands, and that Foster G. Forrest at all times prior to his death exercised all rights of ownership thereto, and since his death appellee, Floy E. Forrest, had possession and control of the lands, paid the taxes and claimed same under the will of Foster G. Forrest.

A demurrer was filed to the original complaint which the chancery court treated as a motion to require

appellee to make her complaint more definite and certain as to her claim of adverse possession. Appellee filed her amended complaint which forms the basis of this action, setting up more fully her claim of adverse possession, coupled with the adverse possession of her husband. The answer of appellants to the amended complaint admitted many of the allegations of the complaint and outlined many of the proceedings heretofore set out, but specifically denied the adverse possession of appellee and her husband to the lands in controversy.

The case proceeded to trial on February 4, 1944, upon the sole issue of whether or not appellee had obtained title to the lands in controversy by her adverse possession coupled with that of her husband during his lifetime for the statutory period of 7 years. The cause was taken under advisement and on May 23, 1944, the court entered a decree vesting title in appellee by adverse possession to the 100-acre tract known as the ''Mountain Tract'' and the 40 acres known as the ''Graveyard Forty,'' and dismissed her complaint as to the 63 acres known as the ''River Place.'' Both parties have appealed from this decree.

Appellants contend that their demurrer to the original complaint should have been sustained, and that the court erred in treating it as a motion to make appellee's complaint more definite and certain as to her claim of adverse possession. We do not agree. Appellee alleged in her complaint that Foster G. Forrest exercised all rights and control over the lands prior to his death, and that appellee had possession and control of said lands since the death of her husband. We think the allegation of the original complaint as to adverse possession sufficient to permit an amendment thereof to more clearly set it out, and the court did not err in so holding. If the demurrer had been sustained, appellee still had a right to amend her complaint under § 1413 of Pope's Digest. And this court has held that it is proper to treat a demurrer as a motion to make more definite and certain. *Reynolds* v. *Roth,* 61 Ark. 317, 33 S. W. 105.

Appellants also urge error of the court in its failure to sustain their plea of *res judicata* based on dismissal of the 1937 chancery case in which Jim Forrest, Jewell Partin and Nelia Magness were plaintiffs and appellants and appellee were made party defendants. The plaintiffs in that suit were children of Foster G. Forrest and appellee who sought to set aside the deeds involved in this action. The complete record of that case includes the complaint and order of dismissal. The order of dismissal was entered November 1, 1937, and recites, ''that the motion of said plaintiffs should be sustained and that the said cause should be dismissed with prejudice as to all further and future actions on behalf of said plaintiffs.'' Appellee was not a party plaintiff in the action. She was made a party defendant, it is true, but the record reflects neither appearance by her nor service upon her in the suit. She could not, therefore, be bound by this order of dismissal, and appellants' plea of *res judicata* cannot be sustained.

Appellants also insist that appellee is precluded from maintaining a suit to quiet title because of the equitable maxim that ''he who comes into equity must come with clean hands.'' The rule is stated in 2 C. J. S. 656, § 95, as follows: ''The general rule that possession of a grantor remaining in possession of land is presumably subservient to the title of the grantee applies where the deed is in fraud of the grantor's creditors; but in case of a fraudulent grantor, as in other cases, the grantor upon a proper showing may establish title by adverse possession as against his grantee.''

In the case of *Johnson* v. *Johnson,* 106 Ark. 9, 152 S. W. 1017, a husband purchased land and took title in the name of a third party in order to defraud creditors. The husband then went into possession and cultivated the land for six years. At his death the widow continued in possession two years. This court held that her possession, in privity with her husband, gave his heirs title by adverse possession and entitled the widow to have dower and homestead assigned to her. The difference in that case and the case at bar is that appellee, in this action is

seeking to recover by tacking her adverse possession to that of her husband's by virtue of being the sole beneficiary under his will, while in the case of *Johnson* v. *Johnson, supra,* the widow only had a dower and homestead right. It is well settled that a will is such an instrument as will support the tacking of successive possessions. See 1 Am. Jur. 880. So here we hold that appellee is entitled to tack her continued possession, after the death of her husband, to his possession before that time to give her title by adverse possession.

The chancellor found that, after the execution and delivery of the deeds to his son on January 6, 1933, Foster G. Forrest never delivered possession of the 140 acres known as the ''Mountain Tract'' and ''Graveyard Forty'' to said Vermon J. Forrest, but continued in adverse possession of same until his death, exercising all rights of ownership thereto. He also found that, immediately after the death of her husband, appellee took possession and control of said lands, claimed same under the will of Foster G. Forrest, and had been in adverse possession of same since the death of her husband, and that appellee's possession coupled with that of her husband, being more than seven years, vested title in her to said 140 acres of land. As to the 63 acres of land known as the ''River Place,'' the court found that Foster G. Forrest disclaimed ownership and title in said lands during his lifetime; that Vermon J. Forrest exacted rent of appellee, ousted her possession, and that appellee did not acquire title to this tract by adverse possession and was not entitled to judgment for the proceeds of the sale of said lands to the United States Government.

Appellants contend that appellee has not established her claim of adverse possession to the 140 acres by a preponderance of the evidence, while appellee, on cross-appeal, insists that the evidence establishes her claim to all the lands involved, including the 63-acre ''River Place'' which was sold to the Government. An attempt to detail the testimony on this issue would unduly prolong this opinion. We have carefully considered all the evidence in the light of the rule which requires the grantor,

and those who claim under him, to clearly prove the intent to hold adversely for the statutory period. We cannot say that the findings of fact made by the chancellor on this issue are against the preponderance of the evidence. The decree of the chancery court is accordingly affirmed.