B. S. TOSCANO, Independent Executor of the Estate of Louisa D. Castillo, Deceased, Appellant,

v.

Celedonio DELGADO, Appellee.

No. 15259.

Court of Civil Appeals of Texas, San Antonio.

Feb. 6, 1974.

Rehearing Denied March 13, 1974.

Michael W. Wagner, San Antonio, for appellant.

R. L. Eschenburg, Floresville, for appellee.

CADENA, Justice.

Plaintiff, B. S. Toscano, as independent executor of the estate of Louisa D. Castillo, filed this suit in trespass to try title against defendant, Celedonio Delgado. Plaintiff appeals from a judgment in favor of defendant following a nonjury trial.

The title asserted by plaintiff rests entirely on a claim of adverse possession for a period in excess of ten years. Article 5510, Vernon's Tex.Rev.Civ.Stat.Ann.

The land in question is a 15-acre tract, referred to in the testimony as Lot 4,

which is a part of a larger tract originally owned by Ramon Castillo and his wife, Candelaria Castillo. Ramon Castillo died intestate in 1886 or 1887, while his wife, Candelaria, died intestate in 1930 or 1932. These original owners, Ramon and Candelaria Castillo, were survived by six children: Trinidad; Alberto; Nestor; Ramon, Jr.; Maria and Guadalupe. These six children will be referred to in this opinion as the "original cotenants."

Trinidad, one of the original cotenants, married plaintiff's testatrix, Louisa Castillo, and died on December 6, 1961, leaving a will which was duly probated and under which Louisa's claim to the land in question is based. At the time of the trial, Nestor, another of the original cotenants, had died, although the date of his death is not revealed. Nestor was survived by Jesus Castillo, Eliza (or Elisa), Ramon, Feliz and Nestor, Jr.

On September 15, 1932, Trinidad Castillo and two of the other five original cotenants, Alberto and Maria, executed an instrument quitclaiming all of their right, title and interest to Lot 4 to Jesus Castillo, Eliza C. Viaras, Ramon Castillo, Feliz Castillo and Nestor Castillo. It appears that three of these grantees, Jesus Castillo, Eliza C. Viaras and Feliz Castillo, were children of the Nestor Castillo who was one of the original cotenants. But the evidence does not disclose whether the other two grantees in the 1932 quitclaim deed, Ramon Castillo and Nestor Castillo, were two of the original cotenants or whether they were the children of Nestor, one of the original cotenants. In any event, it is clear that Guadalupe Castillo, one of the original cotenants, was not named as either a grantor or a grantee in this quitclaim deed.

Plaintiff's claim of title rests on the alleged adverse possession by Trinidad, one of the original cotenants, and one of the persons named as grantor in the 1932 quitclaim deed. In order to establish a title by limitations, plaintiff had the burden of establishing that Trinidad had perfected a prescriptive title against at least one of his former cotenants (Guadalupe, who did not participate as grantor or grantee in the 1932 quitclaim deed), or three of his former cotenants (Guadalupe, Nestor and Ramon, assuming that the Ramon and Nestor named as grantees were the sons of the original cotenant, Nestor Castillo, and not two of the original cotenants). It was also necessary for plaintiff, in order to prevail with respect to the entire interest in Lot 4, to establish that he had acquired title by adverse possession as against the persons named as grantees in the 1932 quitclaim deed.

■ We agree with plaintiff that, after the execution of the 1932 quitclaim deed, Trinidad had divested himself of all interest in Lot 4 and was not thereafter a cotenant with anyone in relation to Lot 4. Lott v. Lott, 370 S.W.2d 463 (Tex.1963). But the critical question is whether the nonparticipating cotenants, whether one or three, had notice of the termination of the cotenant relationship, so that the possession of Trinidad became adverse as to them.

■ The evidence does not establish whether Trinidad was in possession of Lot 4 at the time he executed the quitclaim deed (in which case his possession could be viewed, by the other cotenants, as being a rightful exercise of his rights as cotenant), or whether he went into possession after he executed the quitclaim deed. In one dialogue between the trial court and counsel for plaintiff, the judge asked if Trinidad had *remained* in possession of Lot 4 after executing the quitclaim deed. Plaintiff's attorney answered this question in the affirmative. At another point during the proceedings, counsel for plaintiff stated to the court that Trinidad went into possession of Lot 4 *after* he executed the quitclaim deed. Even if these exchanges between the trial court and plaintiff's counsel, who had not been sworn, are regarded as "testimony," they are equivocal and fail to establish that Trinidad did not assume

possession of the land in question until after the execution of the quitclaim deed. In the absence of findings of fact by the trial court, we must assume that all disputed fact issues were resolved in a manner which will support the judgment. We must, therefore assume that the trial court found that Trinidad was in possession of Lot 4 at the time that he executed the quitclaim deed, and that after the execution of such deed, he merely remained in possession of the land.

■ It must be noted that Trinidad did not, by the quitclaim deed, purport to convey the entire interest to Lot 4. Therefore, the cases, such as Parr v. Ratisseau, 236 S.W.2d 503 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.), which indicate that a conveyance by one cotenant of the "entire estate" may, under certain circumstances, be regarded as an ouster of his cotenants, are not applicable here. The act of a cotenant in conveying only his interest in the premises is not notice to the other cotenants of a repudiation of the cotenancy relationship.

■■ If Trinidad was in possession of Lot 4 at the time he executed the quitclaim deed, and thereafter remained in possession, there was no change in the situation which can be said to establish that, with respect to the nonparticipating cotenants, his possession, which had originally been a rightful possession as cotenant, had changed into a possession hostile and adverse to the claim of the other cotenant or cotenants. It is elementary that one cotenant may claim adversely to his fellow tenants in common only if he has repudiated the cotenancy and notice of such repudiation has been brought home to the other cotenants. 2 Tex.Jur.2d, Adverse Possession, Section 35. There is nothing in the record to indicate that Trinidad's continued possession was of such a nature as to indicate that his possession was other than as a cotenant.

■ A grantor who remains in possession of property after he has delivered a deed to such property will ordinarily be presumed to be holding the land in subordination to the rights of his grantees, rather than adversely to such grantees' rights. Hemming v. Zimmerschitte, 4 Tex. 159 (1849); Petty v. Dunn, 419 S.W.2d 417 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.).

■ Plaintiff's fourth point of error claims that the trial court erred in not allowing him to reopen the case and introduce further testimony after he had rested. The motion to reopen was not made when plaintiff rested. It was made after both sides had closed and after the court took the case under advisement. According to the motion, filed several days after the court took the case under advisement, the evidence which plaintiff desired to introduce would have shown the plaintiff was not a cotenant with any of his brothers and sisters, nor with any of the descendants of deceased brothers and sisters, at the time he entered into possession of the land in question. However, assuming that plaintiff was not a cotenant with any person at the time he took possession, there is nothing in the motion to reopen which suggests that the new evidence would establish facts sufficient to permit plaintiff to claim adversely as against the grantees in the 1932 quitclaim deed. The error, if any, of the court in not allowing plaintiff to reopen was, therefore, harmless, since the evidence which plaintiff wished to introduce would not tend to show that plaintiff had perfected a prescriptive title.

The third point of error asserts that the trial court erred in overruling plaintiff's motion for leave to take a nonsuit. No such motion is in the record. After the trial court took the case under advisement, plaintiff wrote a letter to the judge enclosing a copy of plaintiff's motion to reopen. This letter requested that, if the court was of the opinion that the motion to reopen should be overruled, plaintiff would "appreciate it" if the court would give plaintiff ". . . time to take a non-suit before rendering judgment herein." This

letter was dated April 17, 1973, and the motion to reopen was filed April 18, 1973. On April 20, 1973, the trial judge wrote to the attorneys announcing his decision to enter judgment in favor of defendant.

We recognize that, save in exceptional circumstances, the right of plaintiff, on timely demand, to take a nonsuit is unlimited. 4 McDonald, Texas Civil Practice, Judgments, Section 17.16.1–17.16.3 (1971 rev.). However, in this case plaintiff at no time moved to take a nonsuit before rendition of judgment. He did indicate to the court that if his motion for leave to reopen were denied, he would appreciate it if the court would delay rendering judgment until plaintiff had time to file a motion for a nonsuit. We know of no authority to support the contention that the court is under any obligation to delay rendition of judgment in order to allow plaintiff time to file a nonsuit. The record does not disclose that plaintiff ever made a timely *demand* that he be allowed to voluntarily dismiss his action.

The judgment of the trial court is affirmed.