IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,825

POLLY M. RUHLAND,
f/k/a/ POLLY MARIE (MOORE) GRANT,
*Appellant*,

v.

SUE ELLIOTT,
*Appellant*,

and

LORENA ELLIOTT, a/k/a LORENA ANNIS; RICHARD ELLIOTT;
SUZANN ELLIOTT; ROGER ELLIOTT; and ERIC F. GRANT,
*Appellees*.

SYLLABUS BY THE COURT

1.

Whether a party has acquired title by adverse possession is a question of fact to be determined by the trier of fact.

2.

An appellate court reviews a district court's factual findings to determine if the record shows substantial competent evidence to support the findings. Substantial competent evidence is such evidence that provides a substantial basis of fact from which the issues can be reasonably determined.

3.

A party claiming title by adverse possession must prove each of the statutory requirements by clear and positive proof, which in the context of adverse possession

1

corresponds to clear and convincing evidence and means evidence that shows the truth of the facts asserted is highly probable.

4.

A party may not establish adverse possession through inference. Rather, a party claiming title through adverse possession must rely on the strength of his or her own title and not the weaknesses of his or her adversary's title. Every presumption is in subordination to the rightful owner.

5.

K.S.A. 60-503 requires a party claiming ownership by adverse possession to have: (1) possessed the property for a period of 15 years in a manner (2) that is (a) open, (b) exclusive, *and* (c) continuous; and (3) that is either (a) under a claim knowingly adverse *or* (b) under a belief of ownership.

6.

If a party seeks to establish adverse possession by showing 15 years of continuous, exclusive, and open possession under a claim knowingly adverse, that party must show his or her possession was hostile to the claim of the true owner. Hostile in this sense refers not to animosity but merely to the fact that the possessor is knowingly claiming adversely to the title of the true owner.

7.

In the absence of evidence to the contrary, the possession of the grantor, who has made an absolute conveyance, is presumed to be temporary and in subservience to the title of his grantee. The possession of a grantor of land is not considered to be adverse to a grantee, who has been vested with the entire title to the premises, and cannot be so

regarded until the grantor explicitly renounces the title of his grantee or positively asserts a hostile claim of title in the grantor which is brought to the attention of the grantee.

8.

Under Supreme Court Rule 7.07(a)(5) (2014 Kan. Ct. R. Annot. 70), an appellate court mandate will direct that an appellant recover the original docket fee and expenses for transcripts, if any, when a decision of the district court is reversed. This provision does not apply when a decision of the district court is only reversed in part.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 9, 2013. Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed July 10, 2015. Judgment of the Court of Appeals reversing the district court on the single issue subject to our review is affirmed. Judgment of the district court on the single issue subject to our review is reversed.

*Don W. Noah,* of Noah Law Office, P.A., of Beloit, argued the cause and *Frank G. Spurney, Jr.*, of Spurney & Spurney, of Belleville, was with him on the briefs for appellants Polly M. Ruhland and Sue Elliott.

*William R. Thompson*, of Condray & Thompson, L.L.C., of Concordia, argued the cause and *Scott R. Condray*, of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

LUCKERT, J.: This case arises from a dispute over the ownership of a 5.5-acre tract of real estate in Cloud County. The district court determined that Keith Elliott, who had at one time deeded away the land to his then-wife's daughter, had regained possession of the disputed tract through adverse possession. A panel of the Court of Appeals reversed on the issue subject to our grant of review, concluding that the district court's conclusion was not supported by substantial evidence. We now affirm the Court of Appeals' decision on that issue and reverse the judgment of the district court.

FACTS AND PROCEDURAL HISTORY

Keith purchased the disputed tract in 1963 as part of a larger purchase of approximately 80 acres. Keith built a metal building on the disputed tract sometime during 1980, but it is unclear when Keith actually began living on the land. Keith married Sue Elliott in 1988, and together they built an apartment inside the metal building and began living there.

After a few years, Keith and Sue became concerned the Internal Revenue Service or Keith's ex-wife might attach the disputed tract to satisfy Keith's unpaid debts. To avoid losing the property to a creditor, Keith and Sue decided to transfer ownership of the disputed tract to Sue's daughter from a former marriage, Polly Marie (Moore) Grant (now Polly M. Ruhland), and her husband, Eric Grant. Keith and Sue executed a warranty deed transferring the property on June 14, 1993, and the deed was recorded in Cloud County on the same date.

Despite the transfer of ownership, Keith and Sue continued living on the disputed tract in the same way as before:  They maintained the disputed tract, made improvements such as planting trees and digging a well, and paid the property taxes. Keith and Sue did not execute a lease agreement or pay any rent, and Polly and Eric took no actions as owners or landlords and received no benefits from the property.

In 1999, Polly and Eric divorced. On March 9, 1999, in anticipation of the divorce, they executed a document labeled "QUIT CLAIM DEED" that purported to transfer their interest in the disputed tract to Sue alone. However, despite its title, this document did not follow the statutory language for quitclaim deeds and, although Polly mailed the document to Keith and Sue, it was never recorded. Sue testified at trial that she was not

4

even aware of the document's existence until the present litigation, although it was found among Keith's private papers after his death. This "quit claim deed" did not significantly factor in the district court's decision and the district court did not determine its precise legal effect.

Keith and Sue lived together in the apartment on the disputed tract from 1988 until 2000. In September 2000, Sue moved to Pittsburg. She initially intended to return to the disputed tract after about a year, but she never did—ultimately, she remained in Pittsburg until she and Keith divorced in 2006.

But Keith continued living in the apartment. In August 2006 he leased a tract of real estate—which included a portion of the disputed tract—out for agricultural purposes. The tenant paid rent to Keith and testified at trial that he was not aware that someone other than Keith might own the property. Later, in 2008, Keith sold approximately 75 acres of real estate. He and the buyer discussed a simultaneous purchase of the disputed tract, but the final sale did not include it. The buyer testified at trial that Keith had said the buyer could always buy the disputed tract from Keith's daughter after he died, and the buyer further testified that he was unaware Keith might not be the actual owner of the land.

All told, Keith lived in the apartment on the disputed tract from 1988 until he died on May 8, 2009. His daughter, Suzann Elliott, then took possession of the disputed tract, maintained it, and paid all expenses—including taxes. Neither Polly nor Sue initially took any action to eject Suzann from the disputed tract, and indeed they did nothing to care for the property.

But sometime after Keith's death, his children and Sue's children began to dispute the ownership of certain personal property and the ownership of the disputed tract. In

April 2010, Suzann filed a caveat affidavit claiming ownership of the disputed tract through Keith's adverse possession. Polly filed an interpleader action and sought a court order declaring that either she or Sue was the rightful owner of the disputed tract. Polly's ex-husband, Eric, quitclaimed to Sue any interest he might have had in the tract, thereby effectively removing himself from the litigation. Sue died during proceedings before the district court, but her death does not affect the issues in the case.

Suzann raised numerous defenses to Polly's claim to the disputed tract, but the district court granted summary judgment on all of Suzann's defenses in favor of Polly, save one—Suzann's allegation that Keith had reacquired ownership of the property via adverse possession. The case eventually proceeded to a bench trial on this sole issue. The district court held Suzann proved all of the elements of adverse possession by clear and convincing evidence, and it accordingly concluded Keith obtained title to the disputed tract by adverse possession, which he then passed to Suzann by intestate succession.

Polly appealed, and a panel of the Court of Appeals reversed on the grounds that Keith had only permissively occupied the disputed tract after he deeded it to Polly, a fact that defeated any adverse possession claim by Keith or his heirs. *Ruhland v. Elliott*, No. 108,825, 2013 WL 4046605, at *5-6 (Kan. App. 2013) (unpublished opinion). Accordingly, the panel concluded that substantial competent evidence did not support the district court's conclusion that Keith had possessed the disputed tract under a knowingly adverse claim. 2013 WL 4046605, at *6.

Polly filed a petition for review regarding the district court's and panel's denial of her requests for costs, attorney fees, and sanctions. We denied her petition for review, but we granted Suzann's cross-petition for review on the adverse possession issue pursuant to K.S.A. 20-3018(b). Jurisdiction is proper under K.S.A. 60-2101(b).

6

Suzann argues that Keith's occupancy was adverse, not permissive, because despite the deed to Polly he always acted as the owner and always intended his continued possession to be permanent. She also advances an argument, for the first time on appeal, that Keith did not occupy the land with Polly's permission but, instead, that Polly acquiesced to Keith's assertion of ownership. Polly responds that Suzann's adverse possession claim fails for two reasons: First, there was no evidence that Keith claimed ownership of the land or notified the true owner of his alleged adverse claim, and, second, Suzann failed to prove that Keith's possession was exclusive.

1. *The standard of review and analytical framework.*

Whether a party has acquired title by adverse possession is a question of fact to be determined by the trier of fact—in this case, the district court. *Schaake v. McGrew*, 211 Kan. 842, 845, 508 P.2d 930 (1973). We review the district court's factual findings to "determine if the record shows substantial competent evidence" to support the findings. 211 Kan. at 845. Substantial competent evidence is such evidence that "provides a substantial basis of fact from which the issues can be reasonably determined." *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009); see also *Boese v. Crane*, 182 Kan. 777, 779, 324 P.2d 188 (1958) (explaining that we will not weigh the evidence and are concerned "only with whether it supports the findings made by the trial court"). However, we exercise de novo review over a district court's interpretation of the adverse possession statute, K.S.A. 60-503. See *Dillon Real Estate Co. v. City of Topeka*, 284 Kan. 662, 665, 163 P.3d 298 (2007).

K.S.A. 60-503 provides: "No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession

of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years."

A party claiming title by adverse possession must prove each of the statutory requirements by "clear and positive proof." *Boese*, 182 Kan. at 782. We take this opportunity to approve the Court of Appeals' conclusion in *Ruhland*, 2015 WL 4046605, at *3, that "clear and positive proof" in the context of adverse possession corresponds to "clear and convincing evidence," which means evidence that "shows the truth of the facts asserted is highly probable." See, *e.g.*, *Crone v. Nuss*, 46 Kan. App. 2d 436, 442-43, 263 P.3d 809 (2011), *rev. denied* 294 Kan. 943 (2012); *Wright v. Sourk*, 45 Kan. App. 2d 860, 866, 258 P.3d 981 (2011), *rev. denied* 293 Kan. 1114 (2012); accord *In re B.D.-Y.*, 286 Kan. 686, 694-96, 187 P.3d 594 (2008).

A party may not establish adverse possession through inference. *Boese*, 182 Kan. at 782; see also *Stith v. Williams*, 227 Kan. 32, 36, 605 P.2d 86 (1980) ("'The law will not allow the property of one person to be taken by another upon slight presumptions or probabilities'" [quoting 2A C.J.S., Adverse Possession § 267].). Rather, a party claiming title through adverse possession must "rely on the strength of his [or her] own title and not the weaknesses of his [or her] adversary's title." *Beams v. Werth*, 200 Kan. 532, 543, 438 P.2d 957 (1968). "Every presumption is in subordination to the rightful owner." *Boese*, 182 Kan. at 782; see *Stith*, 227 Kan. at 36.

Here, the parties do not dispute all of the K.S.A. 60-503 elements of adverse possession. Parsing the elements in K.S.A. 60-503, it requires a party claiming ownership by adverse possession to have:

(1) possessed the property for a period of 15 years in a manner
(2) that is (a) open, (b) exclusive, *and* (c) continuous; and

8

(3) that is either (a) under a claim knowingly adverse *or* (b) under a belief of ownership.

As to the first element, no one disputes that Keith possessed the property for the requisite 15-year period. The disputes arise over whether he did so under the requisite conditions. As to the conditions imposed through the second element, the parties do not dispute that Keith openly and continuously possessed the disputed tract. But Suzann must also establish that Keith's possession was exclusive, and Polly argues Suzann has failed to do so. As to the final element, neither party has presented any argument regarding the district court's rejection of any assertion that Keith possessed the disputed tract "under a belief of ownership." See *Ruhland*, 2013 WL 4046605, at *4; see also *State v. Rojas-Marceleno*, 295 Kan. 525, 543, 285 P.3d 361 (2012) (reaffirming that failure to adequately brief an issue results in abandonment or waiver of the issue). Therefore, if Suzann is to satisfy the third element, she must do so by proving that Keith possessed the disputed tract "under a claim knowingly adverse." See *Stark v. Stanhope*, 206 Kan. 428, 433, 480 P.2d 72 (1971) (explaining statutory amendments effective in 1964 created alternative conditions of a possession that is [1] knowingly adverse—*i.e.*, hostile or [2] under a "'belief of ownership'").

If Suzann failed to prove both of the two disputed elements—exclusive possession and possession under a claim knowingly adverse—by clear and convincing evidence, her claim of adverse possession must fail. See *Shaw v. Bandel*, 122 Kan. 343, 346, 251 P. 1086 (1927). We first address the question of whether there is clear and convincing evidence that Keith possessed the disputed tract under a claim knowingly adverse.

9

2. *The evidence does not clearly demonstrate that Keith possessed the tract under a claim knowingly adverse.*

If a party seeks to establish adverse possession by showing 15 years of continuous, exclusive, and open possession "under a claim knowingly adverse," that party must show his or her possession was "hostile" to the claim of the true owner. See, *e.g.*, *Stark*, 206 Kan. at 432-33 (explaining that while K.S.A. 60-503 eliminated hostility as an "essential" element by permitting a party to satisfy the statute by showing instead a belief of ownership, a party not relying on belief of ownership must still show "an adverse or hostile holding"). "Hostile" in this sense refers not to animosity, but merely to the fact that the possessor is knowingly claiming adversely to the title of the true owner. See 206 Kan. at 432-33; 2 A.L.R.3d 1005 § 2(a), p. 1008 ("With respect to 'hostile' possession, there is again general agreement that the term 'hostile' does not mean that there must be ill will or malevolence, but only that the one in possession of land claims the exclusive right thereto."); see also *Fear v. Barwise*, 93 Kan. 131, 136, 143 P. 505 (1914) (emphasizing that the relevant question is whether the possessor intends "to appropriate the land to his own use without regard to any claim his rival may advance").

Correspondingly, we have consistently held that "'[u]se by the owner's permission will not ripen into adverse possession no matter how long [the land is] used.'" *Kratina v. Board of Commissioners*, 219 Kan. 499, 502, 548 P.2d 1232 (1976) (quoting *City of Osawatomie v. Slayman*, 185 Kan. 631, 634, 347 P.2d 405 [1959]). This rule that possession by permission is never adverse within the meaning of K.S.A. 60-503 applies with special force when a grantor of land later attempts to reclaim title from the grantee via adverse possession. In *Dotson v. Railway Co.*, 81 Kan. 816, 818, 106 P. 1045 (1910), this court held:

10

"In the absence of evidence to the contrary, the possession of the grantor who has made [an absolute] conveyance is presumed to be temporary and in subservience to the title of his grantee. The possession of a grantor of land is not considered to be adverse to a grantee who has been vested with the entire title to the premises, and can not be so regarded until the grantor explicitly renounces the title of his grantee or positively asserts a hostile claim of title in himself, which is brought to the attention of the grantee."

Thus, pursuant to the *Dotson* doctrine, we will assume that a grantor who continues to possess the land the grantor has given away does so with the permission of the grantee. To allow otherwise would be unjust, as a grantee should be permitted to rely on the grantor's total renouncement of the property by transfer. See 81 Kan. at 819 (citing *Zeller's Lessee v. Eckert et al.*, 45 U.S. (4 How.) 289, 296, 11 L. Ed. 979 [1846]).

However, the *Dotson* presumption may be overcome if the grantor puts forth "strong, clear evidence of a purpose to claim adversely to the grantee." 81 Kan. at 818-19. Specifically, there must be evidence the grantor "explicitly renounces" the title of the grantee by positively asserting "a hostile claim of title in himself, which is brought to the attention of the grantee." 81 Kan. at 818.

In this case, the Court of Appeals discussed the *Dotson* presumption and concluded that Suzann had failed to rebut it. The Court of Appeals did not, however, discuss this court's opinion in *Freeman v. Funk*, 85 Kan. 473, 117 P. 1024 (1911), which was decided 1 year after *Dotson*. See *Ruhland*, 2013 WL 4046605, at *5-6. It does not appear that any party cited *Freeman* in the district court or the Court of Appeals, and *Freeman* is not mentioned in the district court or Court of Appeals decisions. Nonetheless, noting obvious factual similarities with her own case, Suzann urges us to find that *Freeman* controls the resolution of her appeal.

11

In *Freeman*, a father deeded real estate to his daughter to prevent a creditor from reaching it to satisfy an unpaid debt. The daughter knew the purpose for the transfer and she accepted the deed with the understanding that she would reconvey the property upon request. The father continued living on the land and in fact built a home and a barn. Seven years after the transfer, he requested his daughter reconvey the land but she refused and instead gave him a "life lease," ostensibly to prevent him from disposing of it outside the family. The father lived on the land for 10 more years and then brought an action to quiet title, asserting that he had reacquired title to the property through adverse possession. The district court agreed with the father, and this court affirmed. 85 Kan. at 475-76, 478.

The *Freeman* court explained that while the *Dotson* rule that continued possession of the grantor "must be presumed to be in subservience to the title of the grantee" was "no doubt true as a general proposition," the rule "does not and can not apply" in situations like *Freeman*. 85 Kan. at 477-78. The court identified specific circumstances that led to a contrary conclusion from *Dotson*, including the fact that the grantor "constantly and persistently" claimed ownership for nearly 17 years, the grantor exercised all the rights incident to ownership, and the grantee "from time to time concede[d] the possession of only a paper title, which [was] to be revested upon request of the grantor." 85 Kan. at 477. The *Freeman* court did not conclude that the *Dotson* presumption had been overcome, but instead appears to have concluded the *Dotson* presumption did not apply because, despite the transfer, "the grantor all along asserted ownership in himself" and there were "repeated concessions [by the grantee] that [the] grantor's claim was rightful and that the shifting of the paper evidence of title back to the real owner was a mere formality." 85 Kan. at 478.

We will not foreclose the possibility that there will be some factual circumstances where, despite a grantor and grantee relationship, the *Dotson* presumption that the

grantor's possession is temporary and subservient will not apply. See *Dotson*, 81 Kan. at 818 (suggesting the presumption applies "[i]n the absence of evidence to the contrary," though without explaining what might constitute such evidence); see also, *e.g.*, *Forrest v. Forrest*, 208 Ark. 48, 53, 184 S.W.2d 902 (1945) (explaining the presumption is the "'general rule'"); *Toscano v. Delgado*, 506 S.W.2d 317, 320 (Tex. Civ. App. 1974) ("ordinarily" applying a similar presumption).

Nevertheless, we frankly fail to understand why the circumstances in *Freeman* or in this case justify the holding that the *Dotson* presumption of subservient possession simply does not apply where a grantor transfers land to a grantee for the purpose of avoiding creditors, with the full intent to in reality continue exercising many of the rights of ownership. In such cases, the grantor necessarily intends his possession to be subservient to the grantee's—indeed, that is the premise of a scheme to avoid creditors by transfer of land. See *Forrest*, 208 Ark. at 53 (asserting the presumption of a grantor's subservient title "'applies where the deed is in fraud of the grantor's creditors'" and permitting the fraudulent grantor to rebut the presumption "'upon a proper showing,'" "'as in other cases'" [quoting 2 C.J.S., Adverse Possession § 95]); *Collins v. Colleran*, 86 Minn. 199, 206, 90 N.W. 364 (1902) (asserting that the grantor's intent at the time of conveyance must have been to have his possession be in subordination to the grantee's title); *Robinson v. Reynolds*, 176 S.W. 3, 7 (Mo. 1915) (explaining a grantor's admission that a grantee was supposed to retain title under a deed given to avoid creditors, at least until the grantor settled the debt, was clear evidence that his possession prior to such a settlement was not hostile to the grantee's title).While the grantor in such circumstances may be in continued possession of the grantee's property and may even exercise some or many rights of ownership, such possession is not "adverse" to the title of the grantee because, if the creditors came knocking, the grantor intends the grantee's title to protect him. See *Williams v. Higgins*, 69 Ala. 517, 523 (1881) ("[A] possession can not be

13

adverse, which in any contingency is intended to be in subservience and subordination to the true title.").

*Freeman* fails to explain why a grantor who transfers title in an attempt to avoid creditors nonetheless possesses the property adversely to the grantee's title. The contrary approach taken by other courts in such situations, which is to recognize the application of a *Dotson*-like presumption subject to rebuttal, retains focus on whether the possession is adverse to the title; this approach is more faithful to general principles regarding adverse possession and better reasoned. Accordingly, we hold the *Dotson* presumption applies when a grantor gives a deed to a grantee in an attempt to evade the grantor's creditors and then continues to remain in possession, and we disapprove of the contrary holding in *Freeman*. See *Simmons v. Porter*, 298 Kan. 299, 304, 312 P.3d 345 (2013) (doctrine of stare decisis does not apply when this court is "'clearly convinced [a court-made rule] was originally erroneous'").

This holding does not alter the approach taken by the district court in this case. As previously noted, the district court did not discuss or cite to *Freeman*, and both the district court and the Court of Appeals explicitly applied the *Dotson* presumption. We likewise presume that Keith's possession of the disputed tract was temporary and in subservience to Polly's title and that his continued possession was with Polly's permission. See *Dotson*, 81 Kan. at 818.

To overcome this presumption, Suzann was required to show, with "strong, clear evidence," that Keith explicitly renounced Polly's title or positively asserted a hostile claim of title in himself that was brought to Polly's attention. See 81 Kan. at 818. We conclude that the district court's conclusion that Suzann had done so is not supported by substantial competent evidence.

14

The district court focused on the fact that there was no evidence Polly had given permission to Keith to remain on the property, but the *Dotson* presumption takes the place of such evidence. The district court then appears to have concluded that the *Dotson* presumption was overcome because Keith asserted himself as the owner of the property through his actions and deeds—but the *Dotson* presumption can only be overcome with evidence that Keith explicitly renounced Polly's title (and the district court made no finding that he did so) or with evidence that he positively asserted a hostile claim of title and that this claim was brought to Polly's attention (and the district court made no finding on this point either). See *Dotson*, 81 Kan. at 818-19. As we referenced above, the evidence indicates that the very purpose of the specific transfer at issue in this case was to establish superior title in Polly. See 81 Kan. at 818 (explaining that part of the reason for the *Dotson* presumption is the understanding that a grantor "does not intend to deny the title he has conveyed").

The district court correctly noted that no one involved in the transfer appeared to believe it was permanent, and, drawing all inferences in favor of Polly, this only further suggests that Keith's possession was temporary (and accordingly permissive) until Keith informed Polly otherwise. See *Boese*, 182 Kan. at 782 (drawing every presumption in favor of the rightful owner); *Dotson*, 81 Kan. at 818; see also *Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 678-79, 157 P.2d 805 (1945) (explaining that originally nonhostile possessions can become adverse, but such possession must "'become hostile in character'" to start the adverse possession statute running [quoting 2 C.J.S., Adverse Possession § 87]). The district court found that Keith and Sue eventually satisfied all IRS debts, but there is no evidence suggesting Keith changed his mind and no longer wanted the IRS or his ex-wife to believe that Polly held the title to the property. See *Robinson*, 176 S.W. at 7 ("To show title by adverse possession, we must have not only acts of ownership, but we must have a claim of title *as against all persons*, and *especially against the title of the alleged fraudulent grantee*." [Emphasis added.]).

15

In essence, Suzann failed to rebut the *Dotson* presumption because she pointed to no evidence that Keith explicitly renounced Polly's title by affirmatively asserting a hostile claim of title in himself and bringing this assertion to Polly's attention. Thus, Suzann provided no evidence "operat[ing] to convert what appeared to be a subservient and permissive possession into a hostile and adverse one." See *Dotson*, 81 Kan. at 819.

Suzann's final argument is that, even if Keith never explicitly repudiated the deed to Polly, Polly's acquiescence to Keith's adverse possession provides the functional equivalent. See generally *Spencer v. Supernois*, 176 Kan. 135, 138-39, 268 P.2d 946 (1954) (discussing the doctrine of acquiescence, whereby a mutually agreed-upon boundary line between two adjacent landowners may eventually be declared the true boundary line, even if the time period falls short of that required for adverse possession). We are doubtful this doctrine applies to the facts of this case, but we decline to reach her argument because she raises it for the first time on appeal, without any explanation as to why it is properly before us. See Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40) (requiring a party who is attempting to raise an issue not raised below to explain why it is properly before the appellate court); *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011) (stating our general rule that we will not consider issues raised for the first time on appeal).

We must therefore conclude that Keith's possession was permissive. Suzann cannot prove the material element of adversity by clear and positive proof, which defeats her claim of adverse possession. See *Boese*, 182 Kan. at 782. The district court's conclusion to the contrary was not supported by substantial competent evidence. See *Schaake*, 211 Kan. at 845.

3. *We need not discuss whether Keith's possession was exclusive.*

Because we conclude Suzann did not carry her burden to present clear and positive proof that Keith's possession was knowingly adverse, her adverse possession claim fails and we need not, and do not, reach whether substantial competent evidence supports the district court's conclusion that Keith's possession of the disputed track was exclusive. See *Shaw*, 122 Kan. at 346 (holding that failure to prove any required element precludes a successful adverse possession claim); see also *Ruhland*, 2013 WL 4046605, at *6 (also declining to reach this issue).

## MOTION FOR COSTS

After oral argument before this court, Polly filed a motion requesting an order directing that the district court and appellate filing fees, a service of process fee, and the transcript costs be assessed against Suzann.

In the district court, Polly had filed a motion seeking the costs and attorney fees as a sanction under K.S.A. 60-211. The district court denied the motion, and, on appeal, the Court of Appeals affirmed. Polly filed a petition for review, seeking our review of the Court of Appeals' ruling on this point. We denied the petition and, as a result, do not have jurisdiction to review the ruling that Polly is not entitled to costs and fees as a sanction. See Kansas Supreme Court Rule 8.03(g) (2014 Kan. Ct. R. Annot. 80) ("The denial of a petition for review is not subject to a motion for reconsideration by the Supreme Court.").

Nevertheless, noting that Polly "has only lost on a request for fees under K.S.A. 60-211," Polly's counsel asks for us to order the costs paid. She fails to explain how this new theory can be considered for the first time through a motion filed after oral argument in this court, especially when we have denied review on the issue she presents.

17

It appears to us that, if we were to grant Polly's request, we would be constrained to do so under Kansas Supreme Court Rule 7.07 (2014 Kan. Ct. R. Annot. 70). Only Rule 7.07(a)(4) and Rule 7.07(a)(5) appear to have any relevance to Polly's request.

Under Rule 7.07 (a)(4) (2014 Kan. Ct. R. Annot. 71), certain fees and expenses can be assessed "as justice may require." In our view, our decision denying review of the Court of Appeals' decision on this point forecloses application of this subsection. Rule 7.07(a)(5) (2014 Kan. Ct. R. Annot. 71) does not depend on the exercise of discretion but instead states: "When a decision of the district court is reversed, the mandate will direct that appellant recover the original docket fee and expenses for transcripts, if any." But here the Court of Appeals reversed in part and affirmed in part, and this court denied review over the portion of the judgment that was affirmed—the decision about costs and fees. Thus, the district court's decision was not fully reversed, and Rule 7.07(a)(5) does not apply.

We therefore deny Polly's request for costs, fees, and expenses.

CONCLUSION

On the one issue subject to our review—the adverse possession claim—we affirm the Court of Appeals' decision reversing the district court's decision and reverse the district court.

18