NOT DESIGNATED FOR PUBLICATION

No. 124,377

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM A. PETERSON and KIMBERLY A. PETERSON,
*Appellants*,

v.

DINA J. SEIBERT,
*Appellee*.


MEMORANDUM OPINION

Appeal from Atchison District Court; DAVID J. KING, judge. Opinion filed May 27, 2022.
Affirmed.

*John R. Kurth*, of Kurth Law Office Incorporated, P.A., of Atchison, for appellants.

*Allen A. Ternent*, of Ternent Law Office, of Atchison, for appellee.

Before HILL, P.J., MALONE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: William A. Peterson and Kimberly A. Peterson (the Petersons) brought an adverse possession claim against Dina J. Seibert over a small strip of land that had been enclosed by a fence and maintained by the Petersons as part of their backyard for many years. Following a bench trial, the district court found the Petersons failed to prove their claim of adverse possession by clear and convincing evidence, mainly because they failed to show a reasonable belief of ownership of the disputed property. Under our standard of review, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

The house that would become the Petersons' residence had about eight owners since it was built. In the 1980s, one of the previous owners enclosed the backyard with a chain link fence. The Petersons bought the house in 2003 and at that time, the property still had the chain link fence around the backyard.

When the Petersons bought the home, the seller's disclosure document revealed that the fence marked the boundaries of the property. The disclosure statement did not show whether a survey had been done—the seller put a question mark next to the question rather than checking "yes" or "no." The Petersons bought title insurance, but the policy excepted any questions about boundary. A mortgage title inspection included a drawing of the lot but stated it did not constitute a boundary survey. The drawing depicted the Petersons' lot as pie-shaped, with the end nearest the house being narrow and widening out to the edge of the lot. The diagram depicted the west boundary line—where the chain link fence was located—as being a straight line but noted the measurements for the north and south property lines as 205 feet and 175 feet respectively.

The Petersons maintained their property up to the fence, and sometimes outside the fence when needed to keep snakes away. Around 2018, the Petersons tore down the fence and a shed in the backyard because they were in disrepair. But they left the holes where the fence posts had been located and treated them as the marker of their yard.

In March 2019, Seibert bought her house, which is in the cul-de-sac to the southwest of the Petersons' house and does not share boundary lines with the Petersons' lot. Seibert then decided that she did not want the view from her house blocked so she asked about purchasing the two lots to the north of her house. The two lots—marked as lots 10 and 11—were directly to the west of the Petersons' house and lot 10 adjoins the Petersons' lot and contains the disputed strip of land.

Lots 10 and 11 were owned by David Latner. Before purchasing the lots, Seibert met with her realtor and Latner to look at the property. At that time, there was no fence or shed to indicate that the Petersons were laying claim to the property. In August 2019, Latner ordered a survey of the lots and adjacent properties. The survey reflected the boundary lines and noted the Petersons' fence line was encroaching on lot 10.

Seibert bought lots 10 and 11 in June 2020. After she bought the lots, Seibert contacted Latner about getting a survey because she wanted to know where her property line was so she could plant trees. Latner told her he already had a survey, and Seibert had marker flags placed in accordance with the survey. William first learned that there was a dispute about the property line when he saw survey people in his backyard.

On September 21, 2020, the Petersons petitioned the district court seeking quiet title by adverse possession. The Petersons claimed that for at least 15 years, they had treated the fence line as the boundary line between their property and the lots Seibert bought in 2020. Seibert answered the petition, generally denied the claims, and asked that her "deeded ownership of the subject property be acknowledged" by the court.

On August 25, 2021, the district court held a bench trial. Both parties admitted, without objection, various exhibits, including the seller's disclosure statement, excerpts from the Petersons' mortgage title insurance policy, photographs of the disputed land with and without the fence, aerial shots of the land, and the 2019 survey.

Robert Bednar, the Petersons' next-door neighbor to the south, testified that the fence had been built in the 1980s. Bednar also testified that the lots now owned by Seibert used to be owned by Roger Denton. Bednar testified that he once tried to purchase the lots, but Denton was not interested in selling. Bednar also testified that he had a garden that encroached on the lots, but Denton said that did not bother him.

3

Kimberly and William testified about purchasing the house and maintaining their backyard to the fence line. They testified that no one had ever spoken to them about the property line and they both believed they owned the property up to the fence. On cross-examination, they both agreed that the seller's disclosure document represented only the seller's knowledge, and it was not a warranty or a substitute for any inspection or survey. They also admitted that their title insurance policy did not cover boundary disputes and that a survey would be needed to learn the property's boundaries. They agreed that the mortgage title inspection diagram showed that the north property line was 205 feet while the south property line was shorter at 175 feet.

Seibert testified and explained the facts surrounding the purchase of her home and lots 10 and 11 to the north. She then called Denton, who testified that he originally owned the entire plat of land that included lots 10 and 11. Denton owned the property since 2001 and sold it to Latner in 2019. When asked about the Petersons' property and whether he was aware of a fence encroaching on his land, Denton stated, "I'm going to honestly say there may have been. But I do not remember exactly the condition all the way around there." Denton admitted he was not sure whether he knew the Petersons.

Denton testified "there were a number of encroachments on the property at the time." He testified that he allowed those encroachments. But Denton testified that he did not speak with all the neighbors who encroached on his property, only those who contacted him and spoke with him about it. He testified that his intent in communicating the permission was to avoid the possibility of an adverse possession claim. Denton testified that his business partner "was much more in tune" with the people in the neighborhood, but Denton could not identify which neighbors his business partner spoke to or what he said to them. Denton admitted that he never had a survey done on the property. Both parties rested and the district court took the matter under advisement.

4

On August 27, 2021, the district court filed a memorandum opinion denying the Petersons' adverse possession claim. The district court found that the Petersons satisfied the requirements of "'open, exclusive and continuous possession' of the property for 15 years," but they failed to show a reasonable belief of ownership of the disputed property. The district court pointed to the mortgage title inspection diagram—which listed the measurements of the north property line being 30 feet longer than the south property line—and found that the Petersons could have measured their land in accordance with these dimensions and discovered that their back fence was not the property line. Similarly, the district court pointed out that the title insurance policy excepted questions about boundary and that the seller's disclosure statement was not a warranty.

The district court also determined that a "claim of adverse possession cannot be premised on a permissive possession." The district court pointed out that Denton testified "that he advised the adjoining owners that he was aware of the encroachments [on the subject property] and would permit them. He said he did so specifically to prevent claims of adverse possession." The district court concluded the Petersons "have failed to prove title by adverse possession by clear and convincing evidence" and entered judgment for Seibert. The Petersons timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR IN FINDING THE PETERSONS
DID NOT PROVE THEIR ADVERSE POSSESSION CLAIM?

The Petersons argue the district court disregarded undisputed evidence by finding that they did not have a reasonable belief of ownership. The Petersons assert that the district court's finding essentially holds that they should have measured their property lines. But the Petersons assert that there was no reason for them to do so because the fence was there when they bought the property, and they were told that the fence was the property line. The Petersons also challenge the district court's finding that their

5

encroachment was permissive based on Denton's testimony because Denton testified that he did not talk to every encroacher, and he did not know of the Petersons' fence.

Seibert argues that the district court properly found the Petersons' belief was unreasonable because of the seller's disclosure statement, the title insurance policy's exception on questions about boundaries, and the mortgage title inspection drawing which showed the property lines. Seibert argues that this evidence showed that the Petersons had conflicting information about the property lines, but they chose to take no action to determine the correct boundary lines. Seibert also argues that the district court properly found that the Petersons' encroachment was permissive.

This court reviews a district court's decision on whether a party has acquired title by adverse possession for substantial competent evidence. *Ruhland v. Elliott*, 302 Kan. 405, 409-10, 353 P.3d 1124 (2015). "Substantial competent evidence is such evidence that 'provides a substantial basis of fact from which the issues can be reasonably determined.'" 302 Kan. at 410. When the district court finds that a party has not met its burden of proving an adverse possession claim, an appellate court must uphold the finding unless the party challenging it shows that the district court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias, passion, or prejudice to reach its decision. *MFA Enterprises, Inc. v. Delange*, 50 Kan. App. 2d 1049, 1056, 336 P.3d 891 (2014). The Petersons make no claim that the district court relied on some extrinsic consideration such as bias, passion, or prejudice to reach its decision.

K.S.A. 60-503 governs adverse possession in Kansas and states:

"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a

period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act."

The Petersons' adverse possession claim required them to show that (1) they possessed the property for a period of at least 15 years; (2) the possession was "open, exclusive and continuous"; and (3) the possession was either under a claim "knowingly adverse" or "under a belief of ownership." K.S.A. 60-503; see also *Ruhland*, 302 Kan. at 411. A party claiming title by adverse possession must prove each of the statutory requirements by clear and convincing evidence. See 302 Kan. at 410.

Neither party disputes the district court's findings that the Petersons proved the first two elements of their claim. Instead, the dispute is over the district court's finding that the Petersons failed to show a reasonable belief of ownership of the disputed property and that their possession of the property was not permissive.

We will begin with the district court's finding that the Petersons failed to show a reasonable belief of ownership of the disputed property. Belief of ownership "is a state of mind which must be based on good faith under circumstances which justify such belief." *Wallace v. Magie*, 214 Kan. 481, Syl. ¶ 4, 522 P.2d 989 (1974). The belief of ownership must be reasonable. *Akers v. Allaire*, 17 Kan. App. 2d 556, 558, 840 P.2d 547 (1992). "The question of what constitutes good faith in one claiming to hold property under a belief of ownership is a question for the trier of the fact." *Armstrong v. Cities Service Gas Co.*, 210 Kan. 298, 311-12, 502 P.2d 672 (1972).

The Petersons cannot show that the district court arbitrarily disregarded undisputed evidence in finding that they failed to show a reasonable belief of ownership of the disputed property. In fact, there was substantial evidence supporting this finding. The district court pointed out the seller's disclosure statement did not show the property had been surveyed and the title insurance policy excepted boundary disputes. The district

7

court found these documents showed the Petersons knew there was no guarantee that the fence marked the boundary. The district court relied mainly on the mortgage title inspection diagram that showed the actual dimensions of the backyard. As the district court reasoned, the Petersons would have known the fence was not on the property line had they simply measured the north and south boundary lines specified on the diagram. Based on the information provided in these documents, the district court found the Petersons' belief of ownership of the disputed property was not reasonable.

The Petersons assert that the district court erred in relying on the information in these documents to defeat their claim of a reasonable belief of ownership of the disputed property. The Petersons assert that at best, the documents provided them with constructive notice of the boundary line, but they argue that constructive knowledge is not enough to defeat their adverse possession claim.

The Petersons are correct that constructive knowledge is not enough to undermine a reasonable belief of ownership. The Kansas Supreme Court has held that constructive notice of facts disclosed by public records did not prevent a possessor of land from claiming a good-faith belief of ownership. See *Wallace*, 214 Kan. at 486 (applying constructive knowledge analysis discussed in *Armstrong*, 210 Kan. at 310-11). The court reasoned that to hold otherwise would "obliterate[]" and "judicially nullif[y]" the concept of adverse possession under a belief of ownership because "[i]f an owner was charged with searching the records and found a defect, he no longer could claim [title] under a 'belief of ownership . . . .'" *Wallace*, 214 Kan. at 486.

But *Wallace* and *Armstrong* are distinguishable because the constructive notice rule discussed in those cases referred to facts discoverable in *public records*. The documents the district court relied on here as providing notice—the seller's disclosure statement, the title insurance policy, and the mortgage title inspection diagram—were private documents the Petersons possessed when they bought their home that gave them

8

some notice that the fence might not be on the true property line. Thus, the Petersons' constructive notice argument does not apply here.

The Petersons testified they believed they owned the property up to the fence line and no one told them otherwise. This testimony supported their adverse possession claim. But the Petersons have not established that the district court arbitrarily disregarded this evidence. In fact, the district court mentioned most of the facts supporting the Petersons' belief of ownership but found the belief unreasonable based on the other evidence. The Petersons are essentially asking this court to reweigh the evidence and find their evidence more convincing. But this court does not reweigh evidence or judge the credibility of witnesses in reviewing a district court's decision on an adverse possession claim. *Thompson v. Hilltop Lodge, Inc.*, 34 Kan. App. 2d 908, 910, 126 P.3d 441 (2006). Under our standard of review, we have no basis to reject the district court's finding that the Petersons failed to show a reasonable belief of ownership of the disputed property.

Turning to whether the Petersons' use of the property may have been permissive, Denton, the former owner of the adjoining lots, testified that he knew about various encroachments on the lots by neighbors, but he permitted them specifically to avoid claims of adverse possession. Denton testified that he did not speak with all the neighbors who encroached on his property, only those who contacted him and spoke with him about it. Bednar, the Petersons' next-door neighbor to the south, also testified that he had a garden that encroached on the lots, but Denton allowed it and said it did not bother him.

From this evidence, the district court determined that a "claim of adverse possession cannot be premised on a permissive possession." But Denton could not testify with certainty that he ever told the Petersons their fence was an encroachment that he would permit. In fact, Denton could not recall whether he was aware of the fence encroaching on his land, and he admitted he was not sure whether he knew the Petersons.

9

This evidence diminishes the probative value of Denton's testimony about permitting neighbors to encroach on his property.

We agree with the Petersons that there was insufficient evidence to establish that their fence was a permissive encroachment on the adjoining lots because the evidence did not show that Denton told the Petersons he permitted the fence. But this finding does not mean that the Petersons prevail on their adverse possession claim. The burden was on the Petersons to prove by clear and convincing evidence that their possession of the property was either under a claim "knowingly adverse" or "under a belief of ownership." K.S.A. 60-503; *Ruhland*, 302 Kan. at 411. A landowner's permissive encroachment prevents a claim of adverse possession by undermining the possessor's claim that they possessed the land in a knowingly adverse way. See, e.g., *Ruhland*, 302 Kan. at 412 (explaining that to establish a claim that is knowingly adverse, the claimant must show their possession was hostile to the claim of the true owner and not done with permission).

While the evidence did not establish that the Petersons' use of the property was permissive, the evidence also was not clear and convincing that their possession of the property was knowingly adverse. This means that for the Petersons to prevail on their adverse possession claim, they needed to prove their possession of the property was under a belief of ownership. As we have already discussed, the district court found that the Petersons failed to show a reasonable belief of ownership of the disputed property.

In sum, the district court properly held the Petersons to a high burden of proof to establish their adverse possession claim. The district court placed substantial weight on the documentary evidence, especially the mortgage title inspection diagram showing the measurements of the backyard. Whether the Petersons showed a belief of ownership was a question of fact for the district court to decide, and we do not reweigh the evidence. The district court found that the Petersons' belief of ownership was not reasonable and that they failed to prove their adverse possession claim by clear and convincing evidence. The

10

Petersons cannot show the district court arbitrarily disregarded undisputed evidence in making this finding. Under our standard of review, we have no basis to overturn the district court's judgment denying the Petersons' adverse possession claim.

Affirmed.